## McDAID *v.* OKLAHOMA TERRITORY, *ex rel.* SMITH.

ERROR TO THE SUPREME COURT OF THE TERRITORY
OF OKLAHOMA.

No. 785.  Submitted October 20, 1893. — Decided November 20, 1893.

Under the authority conferred upon the Secretary of the Treasury by the act of May 14, 1890, 26 Stat. 109, c. 207, entitled " an act to provide for town site entries of lands in what is known as ' Oklahoma,' and for other purposes," it was entirely competent for the Secretary to provide for an appeal to the Commissioner of the General Land Office in case of contest.

When an appeal from a decision of the trustees appointed by the Secretary under the provisions of that act was duly taken, it became the duty of the trustees to decline to issue a deed to the appellee until the appeal was disposed of.

THIS was a proceeding in mandamus brought in the District Court of the First Judicial District of Logan County, in the Territory of Oklahoma, April 27, 1891, to compel Daniel J.

McDaïd, William H. Merriweather, and John H. Shanklin, as trustees of the town site of Guthrie, Oklahoma Territory, appointed by the Secretary of the Interior under the act of May 14, 1890, 26 Stat. 109, c. 207, entitled "An act to provide for town site entries of lands in what is known as 'Oklahoma,' and for other purposes," to execute deeds for certain lots in said town site. The relators, Smith and Bradley, claimed to have entered two lots on the site, and one John Galloway claimed a prior right thereto.

On September 23, 1890, the relators applied to the town site trustees for a deed to the lots, and on the same day Galloway also made his application therefor. The trustees heard the controversy of the two claimants, and on April 6, 1891, rendered their decision in favor of the relators, finding that they were entitled to the lots in dispute and to a conveyance from the trustees, and they ordered that a deed be executed accordingly. Galloway having died, his heirs were substituted for him, and they filed their appeal from the decision to the Commissioner of the General Land Office. In consequence of the appeal the trustees refused to issue the deed, and thereupon the relators instituted this suit.

The complaint alleged that the sole ground of refusal was the appeal; that there was no authority for such appeal, and that it furnished no excuse to the trustees for their refusal. The defendants answered, setting up that Galloway's heirs "duly filed their appeal from the decision of this board to the Commissioner of the General Land Office pursuant to the instructions under the act of Congress under which this board was appointed, such instructions having been made by the Secretary of the Interior authorizing appeals by claimants to lots in cases where such claimants feel themselves aggrieved by the decisions of this board.

" And these defendants, further answering, say that there is a right of appeal given by the instructions of the Secretary of the Interior and recognized by this board, and that appeals in similar cases have been taken by other persons from other decisions of this board both before and after the appeal taken in this case.

" And these defendants say that they were appointed by the Secretary of the Interior, and that at the time of their appointment were directed to allow appeals from their decisions where such appeals were properly prayed, and that the appeal in this case was properly prayed, and under such instructions was granted.

" And these defendants further say that the question of legal ownership as to said lot has not been definitely settled by the higher tribunals of the Interior Department, and that no deeds have passed for such lots and should not pass until such appeal is disposed of, and that under such circumstances it is not for this court by mandate or otherwise to direct in what manner or to whom conveyances of lands or lots, the title to which is in the United States, should be made to individuals."

Relators demurred to the answer and their demurrer was sustained.  Defendants then moved to dismiss the cause upon the ground that the territorial court had no jurisdiction over the subject-matter.  This motion was overruled, and thereupon judgment was entered ordering the trustees to execute and deliver a deed to the relators of the lots in question.  An appeal was thereupon prosecuted to the Supreme Court of the Territory, by which the judgment was affirmed, July 6, 1892. The opinion of the court and of Clark, J., dissenting, will be found in 1 Oklahoma, 92.  The cause was then brought to this court by writ of error.

The act of Congress of May 14, 1890, omitting the eighth section, is as follows :

" *Be it enacted, etc.,* That so much of the public lands situate in the Territory of Oklahoma, now open to settlement, as may be necessary to embrace all the legal subdivisions covered by actual occupancy for purposes of trade and business, not exceeding twelve hundred and eighty acres in each case, may be entered as town sites, for the several use and benefit of the occupants thereof, by three trustees to be appointed by the Secretary of the Interior for that purpose, such entry to be made under the provisions of section twenty-three hundred and eighty-seven of the Revised Statutes as near as may be

and when such entry shall have been made, the Secretary of the Interior shall provide regulations for the proper execution of the trust, by such trustees, including the survey of the land into streets, alleys, squares, blocks, and lots when necessary, or the approval of such survey as may already have been made by the inhabitants thereof, the assessment upon the lots of such sum as may be necessary to pay for the lands embraced in such town site, costs of survey, conveyance of lots, and other necessary expenses, including compensation of trustees : *Provided,* That the Secretary of the Interior may when practicable cause more than one town site to be entered and the trust thereby created executed in the manner herein provided by a single board of trustees, but not more than seven boards of trustees in all shall be appointed for said Territory, and no more than two members of any of said boards shall be appointed from one political party.

"SEC. 2. That in the execution of such trust, and for the purpose of the conveyance of title by said trustees, any certificate or other paper evidence of claim duly issued by the authority recognized for such purpose by the people residing upon any town site, the subject of entry hereunder, shall be taken as evidence of the occupancy by the holder thereof of the lot or lots therein described, except that where there is an adverse claim to said property such certificate shall only be *prima facie* evidence of the claim of occupancy of the holder : *Provided,* That nothing in this act contained shall be so construed as to make valid any claim now invalid of those who entered upon and occupied said lands in violation of the laws of the United States or the proclamation of the President thereunder : *Provided further,* That the certificates hereinbefore mentioned shall not be taken as evidence in favor of any person claiming lots who entered upon said lots in violation of law or the proclamation of the President thereunder.

"SEC. 3. That lots of land occupied by any religious organization, incorporated or otherwise, conforming to the approved survey within the limits of such town site, shall be conveyed to or in trust for the same.

"SEC. 4. That all lots not disposed of as hereinbefore pro-

vided for shall be sold, under the direction of the Secretary of the Interior, for the benefit of the municipal government of any such town, or the same or any part thereof may be reserved for public use as sites for public buildings, or for the purpose of parks, if in the judgment of the Secretary such reservation would be for the public interest, and the Secretary shall execute proper conveyances to carry out the provisions of this section.

"SEC. 5. That the provisions of sections four, five, six, and seven of an act of the legislature of the State [of] Kansas, entitled 'An act relating to town sites,' approved March second, eighteen hundred and sixty-eight, shall, so far as applicable, govern the trustees in the performance of their duties hereunder.

"SEC. 6. That all entries of town sites now pending on application hereafter made under this act, shall have preference at the local land office of the ordinary business of the office and shall be determined as speedily as possible, and if an appeal shall be taken from the decision of the local office in any such case to the Commissioner of the General Land Office, the same shall be made special, and disposed of by him as expeditiously as the duties of his office will permit, and so if an appeal should be taken to the Secretary of the Interior. And all applications heretofore filed in the proper land office shall have the same force and effect as if made under the provisions of this act, and upon the application of the trustees herein provided for, such entries shall be prosecuted to final issue in the names of such trustees, without other formality, and when final entry is made, the title of the United States to the land covered by such entry shall be conveyed to said trustees for the uses and purposes herein provided.

"SEC. 7. That the trustees appointed under this act shall have the power to administer oaths, to hear and determine all controversies arising in the execution of this act, shall keep a record of their proceedings, which shall, with all papers filed with them and all evidence of their official acts, except conveyances, be filed in the General Land Office and become part of the records of the same, and all conveyances executed by

them shall be acknowledged before an officer duly authorized for that purpose. They shall be allowed such compensation as the Secretary of the Interior may prescribe, not exceeding ten dollars per day while actually employed; and such travelling and other necessary expenses as the Secretary may authorize, and the Secretary of the Interior shall also provide them with necessary clerical force by detail or otherwise."

Section 2387 of the Revised Statutes reads thus:

"Whenever any portion of the public lands have been or may be settled upon and occupied as a town site, not subject to entry under the agricultural preëmption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated."

Sections four, five, six, and seven of the act of the legislature of the State of Kansas, entitled "An act relating to town sites," approved March 2, 1868, are as follows:

"Sec. 4. At any time after the entry of any such town site, the probate judge of the county in which such town may be situated may appoint three commissioners, who shall not be residents of such town, or the owners of any interest therein; and it shall be the duty of such commissioners to cause an actual survey of such site to be made, conforming, as near as may be, to the original survey of such town, designating, on such plat, the lots or squares on which improvements are standing, with the name of the owner or owners thereof, together with the value of the same.

"Sec. 5. Said commissioners shall, as soon as the survey and plat shall be completed, cause to be published, in some newspaper published in the county in which such town is situated,

a notice that such survey has been completed, and giving notice to all persons concerned or interested in such town site that, on a designated day, the said commissioners will proceed to set off to the persons entitled to the same, according to their respective interests, the lots, squares, or grounds to which each of the occupants thereof shall be entitled. Such publication shall be made at least thirty days prior to the day set apart by such commissioners to make such division.

"Sec. 6. After such publication shall have been duly made, the commissioners shall proceed, on the day designated in such publication, to set apart to the persons entitled to receive the same, the lots, squares, or grounds to which each shall be entitled, according to their respective interests, including, in the portion or portions set apart to each person or company of persons, the improvements belonging to such persons or company.

"Sec. 7. After the setting apart of such lots or grounds and the valuation of the same, as hereinbefore provided for, the said commissioners shall proceed to levy a tax on the lots and improvements thereon, according to their value, sufficient to raise a fund to reimburse to the parties who may have entered such site, the sum or sums paid by them in securing the title to such site, together with all the expenses accruing in perfecting the same, the fees due the commissioners and the surveyor for their respective services, and other necessary expenses connected with the proceedings." Kansas Gen. Stats. 1868, pp. 1074, 1075.

*Mr. Solicitor General* for plaintiffs in error.

No appearance for defendants in error.

Mr. Chief Justice Fuller delivered the opinion of the court.

In *Knight* v. *United States Land Association,* 142 U. S. 161, the supervisory power of the Secretary of the Interior over all matters relating to the sale and disposition of the public lands, the surveying of private land claims and the issuing of

patents thereon, and the administration of the trusts devolving upon the government by reason of the laws of Congress or under treaty stipulations, respecting the public domain, was fully considered, and numerous authorities cited. It was declared by Mr. Justice Lamar, speaking for the court, that the Secretary was clothed with plenary authority as the supervising agent of the government to do justice to all claimants, and to preserve the rights of the people of the United States, and that he could exercise such supervision by direct orders or by review on appeal, and, in the absence of statutory direction, prescribe the mode in which it could be exercised by such rules and regulations as he might adopt.

In the execution of the trusts created by the act of May 14, 1890, the Secretary of the Interior on June 18, 1890, issued a circular setting forth such regulations. (10 Land Dec. 666.) Of these, paragraph 12 provided for the hearing and determination by the town site trustees of controversies between two or more claimants to the same lot, block, or parcel of land, and paragraph 13 for an appeal from their judgment to the Commissioner of the General Land Office, and an appeal from the Commissioner to the Secretary. On May 8, 1891, this paragraph was amended by adding thereto the words: " A failure to appeal as herein provided shall not be construed as a waiver of, or to prejudice the rights of either party, nor held to preclude suits in the courts in case the party entitled to appeal desires to proceed in that manner for the purpose of settling the title to the lot or lots in controversy." (12 Land Dec. 612.) These regulations were referred to by the Secretary under date of July 3, 1891, in certain instructions to the Commissioner of the General Land Office, in which it was ruled that the Secretary was authorized to allow appeals from the decisions of the town site trustees under the act of May 14, 1890, to the Commissioner, even though the act did not expressly provide for an appeal in such cases. (13 Land Dec. 9.) The question of the right of appeal is there discussed at-length, and again on March 15, 1892, (14 Land Dec. 295,) by the Assistant Secretary, who decided that the issue of the patent to town site trustees under the act was not a disposition

of the government title, but a conveyance in trust to be held under the direction of the Secretary of the Interior.

This proposition is denied, and it is insisted that the authority of the Secretary relates solely to public lands, the title to which is still in the United States, and that by the issue of the patent to town site trustees the title passes and all control over the lands embraced therein is lost. Hence that in this case the title of the United States passed by the patent to the trustees, and that they held it thereafter in trust for the occupants, free from the control of the Land Department. Reference is made to *Moore* v. *Robbins*, 96 U. S. 530, and like cases, to the point that when a patent has been awarded, issued, delivered, and accepted, all right to control the title or to decide on the right to the title has passed from the executive department of the government. But those cases refer to the legal title directly and finally conferred, and the principle invoked can only be applicable on the assumption that by the town site conveyance title was granted to the Oklahoma trustees for the purpose of divesting the government of all authority and control over the final disposition of the property, and not for the purpose of putting title in the trustees as agents of the government for the execution of the trust devolving upon them as such. Whether this assumption is justified or not must depend upon the terms and true construction of the act of May 14, 1890.

By section one of that act the land that might be embraced in each town site entry was limited, and it was prescribed that the entry should be made for the several use of the occupants thereof by three trustees to be appointed by the Secretary of the Interior for that purpose, and that when the entry should have been made the Secretary should provide regulations for the proper execution of the trust by such trustees, including surveys when necessary, or the approval of such survey as might already have been made by the inhabitants, and for the assessment upon the lots of such sum as might be necessary to pay for the lands embraced in such town site, costs of survey, conveyance of lots, and other necessary expenses, including compensation of trustees.

Section two provided that in the execution of such trust and for the purpose of the conveyance of title by the trustees, any certificate or other paper evidence of writing duly issued by the authority recognized for such purpose by the people residing upon any town site, the subject of entry thereunder, should be taken as evidence of the occupancy by the holder thereof of the lot or lots therein described, except that where there might be an adverse claim to such property such certificate should only be *prima facie* evidence of the claim of occupancy.

Section four directed that all lots not disposed of as thereinbefore provided for should be sold under the direction of the Secretary of the Interior for the benefit of the municipal government of any such town, or the same or any part thereof might be reserved for public use as sites of public buildings or for the purpose of parks, if in the judgment of the Secretary such reservation should be in the public interest, and the Secretary was required to execute proper conveyances to carry out the provisions of this section.

Section six prescribed the manner of the adjudication of the entries, and directed "that when final entry is made the title of the United States to the land covered by such entry shall be conveyed to said trustees for the uses and purposes herein provided."

By section seven power was given to the trustees to administer oaths and to hear and determine all controversies arising in the execution of the act, and they were directed to keep a record of their proceedings, which should, with all papers filed with them and all evidence of their official acts, except conveyances, be filed in the General Land Office and become part of the records of the same; and the trustees were to be allowed such compensation within a specified limit as the Secretary of the Interior might prescribe, and such travelling and other necessary expenses as he might authorize, and he was also to provide them with the necessary clerical force by detail or otherwise.

In the light of these provisions we perceive no reason for doubting that the trustees appointed by the Secretary under the act, and whose compensation and expenses were fixed by

him, were agents of the government for the purpose of carrying out the trust thereby created to the extent and as specified, and this included the ascertainment of the beneficiaries in the first instance and the transfer of the title to them. While on the final entry the title of the United States was to be conveyed to the trustees, such conveyance was explicitly declared as made "for the uses and purposes in the act provided," and among these uses and purposes was the determination of controversies between contesting claimants by the trustees, who were to administer oaths, pass on evidence, and keep a record of their proceedings, to be deposited in the Land Department. They unquestionably acted in that regard as the representatives of the government, and their decisions were properly subject to that appeal to the Commissioner and the Secretary for which the Secretary's regulations provided. As matter of convenience, the trustees were the instrumentality for the transmission of title in respect of lands disposed of to actual holders, while the Secretary, notwithstanding the patent, was the medium as to surplus lands, which he could not be if the legal title had definitively passed to the trustees by the patent for the whole site. The result is the same if the fourth section be construed as directing the Secretary to cause the trustees to execute the conveyances therein referred to. The trust upon which the title was held was to be discharged in accordance with the regulations, and was necessarily subject to the supervisory power of the Department of the Interior.

Section 2387 of the Revised Statutes confirms this view, for the town sites there referred to were to be entered by the corporate authorities of the town, if incorporated, or, if not, by the judge of the county court for the county in which the town was located, and the trust as to the disposal of the lots and the proceeds of the sales thereof was to be executed in accordance with such regulations as might be prescribed by the legislative authority of the State or Territory in which the town might be situated, while under this special act, in reference to Oklahoma, the entry was to be made by trustees appointed by the Secretary and the trust conducted under such regulations as might be established by him. In the one case

the government parted with its connection with the land when the patent issued to the local authority; in the other, the government retains its connection by having the entry made by its own agents, and the trust executed in the manner it directs.

By the scheme of this act, the title is held in trust for the occupying claimants, it is true, but also in trust *sub modo* for the government until the rightful claimants and the undisposed of or surplus lands are ascertained. The act did not contemplate that the allowance of the entry and the issue of the patent should operate to devolve the final determination of conflicting claims to lots upon these government appointees, and, until the trustees conveyed, the title did not pass beyond the control of the executive department in that regard.

The regulation of the execution of the trust by the Secretary covered the regulation of the matter of controversies between claimants, and also included, in addition and not by way of limitation, the regulation of the survey of the land into blocks, streets, alleys, and lots, and the assessment for purchase money, costs, compensation, and expenses. The supervisory power could no more be denied in respect of the decisions of the trustees upon adverse claims than in respect of the survey and assessment.

In our judgment, it was entirely within the competency of the Secretary to provide for an appeal in cases of contest, and, as he had done so by the regulations in question, and an appeal had been duly taken thereunder in the case before us, the trustees properly declined to issue the deed, and the mandamus was improvidently awarded, even assuming that the District Court has jurisdiction in the premises and that mandamus was the appropriate remedy.

*The judgment is reversed and the cause remanded to the Supreme Court of the Territory of Oklahoma, with a direction to reverse the judgment of the District Court and remand the case to that court with directions to dismiss the petition.*