## BOCKFINGER *v.* FOSTER.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 175. Argued February 26, 1903. Decided June 1, 1903.

Until the title to lands within any townsite boundary has been finally disposed of as provided in the act of Oklahoma Townsite, May 14, 1890, no suit can be maintained against the Townsite Trustees as such to divest them of the title held by them in trust for occupants under that act; although a townsite occupant, after receiving title under the act, may be sued by any one claiming that he had acquired under the homestead laws a right as to the lands prior and superior to that held by the Townsite Trustees for the use and benefit of the townsite occupants.

The Townsite Trustees do not hold an indefeasible title as of private right, with power to dispose of at will, but only as trustees for such occupants as may be ascertained, in the mode prescribed by the act of Congress, to be entitled to particular lots within the townsite boundary.

The investiture of the Trustees with title is only a step towards the transmission, finally, to the occupants of the full interest of the United States in the land.

THIS case involves the construction of the act of Congress passed May 14, 1890, entitled "An act to provide for townsite entries of lands in what is known as 'Oklahoma,' and for other purposes." 26 Stat. 109, c. 207.

As the purpose and scope of the act can be ascertained only by examining all of its provisions, it is here given in full:

"§ 1. That so much of 'the public lands situate in the Territory of Oklahoma, now open to settlement, as may be necessary to embrace all the legal subdivisions covered by actual occupancy for purposes of trade and business, not exceeding twelve hundred and eighty acres in each case, may be entered as townsites, for the several use and benefit of the occupants thereof, by three trustees to be appointed by the Secretary of the Interior for that purpose, such entry to be made under the provisions of section twenty-three hundred and eighty-seven of the Revised Statutes as near as may be; and when such entry shall have been made, the Secretary of the Interior shall provide regulations for the proper execution of the trust, by such trustees including the survey of the land into streets, alleys, squares, blocks, and lots when necessary, or the approval of such survey as may already have been made by the inhabitants thereof, the assessment upon the lots of such sum as may be necessary to pay for the lands embraced in such townsite, costs of survey, conveyance of lots, and other necessary expenses, including compensation of trustees: *Provided,* That the Secretary of the Interior may when practicable cause more than one townsite to be entered and the trust thereby created executed in the manner herein provided by a single board of trustees, but not more than seven boards of trustees in all shall be appointed for said Territory, and no more than two members of any of said boards shall be appointed from one political party.

"§ 2. That in the execution of such trust, and for the purpose of the conveyance of title by said trustees, any certificate or other paper evidence of claim duly issued by the authority recognized for such purpose by the people residing upon any townsite the subject of entry hereunder, shall be, taken as evidence of the occupancy by the holder thereof of the lot or lots therein described, except that where there is an adverse claim to said property such certificate shall only be *prima facie* evidence of the claim of occupancy of the holder: *Provided,* That nothing in this act contained shall be so construed as to make valid any claim now invalid of those who entered upon and occupied said lands in violation of the laws of the United States

or the proclamation of the President thereunder: *Provided further*, That the certificates hereinbefore mentioned shall not be taken as evidence in favor of any person claiming lots who entered upon said lots in violation of law or the proclamation of the President thereunder.

"§ 3. That lots of land occupied by any religious organization, incorporated or otherwise, conforming to the approved survey within the limits of such townsite, shall be conveyed to or in trust for the same.

"§ 4. That all lots not disposed of as hereinbefore provided for shall be sold under the direction of the Secretary of the Interior for the benefit of the municipal government of any such town, or the same or any part thereof may be reserved for public use as sites for public buildings, or for the purpose of parks, if in the judgment of the Secretary such reservation would be for the public interest, and the Secretary shall execute proper conveyances to carry out the provisions of this section.

"§ 5. That the provisions of sections four, five, six and seven, of an act of the legislature of the State (of) Kansas, entitled 'An act relating to townsites,' approved March second, eighteen hundred and sixty-eight, shall, so far as applicable, govern the trustees in the performance of their duties hereunder.

"§ 6. That all the entries of townsites now pending on application hereafter made under this act, shall have preference at the local land office of the ordinary business of the office and shall be determined as speedily as possible, and if an appeal shall be taken from the decision of the local office in any such case to the Commissioner of the General Land Office, the same shall be made special, and disposed of by him as expeditiously as the duties of his office will permit, and so if an appeal should be taken to the Secretary of the Interior. And all applications heretofore filed in the proper land office shall have the same force and effect as if made under the provisions of this act, and upon the application of the trustees herein provided for, such entries shall be prosecuted to final issue in the names of such trustees, without other formality and when final entry is made the title of the United States to the land covered by such entry shall be conveyed to said trustees for the uses and purposes herein provided.

"§ 7. That the trustees appointed under this act shall have the power to administer oaths, to hear and determine all controversies arising in the execution of this act shall keep a record of their proceedings, which shall, with all papers filed with them and all evidence of their official acts, except conveyances, be filed in the General Land Office and become part of the records of the same, and all conveyances executed by them shall be acknowledged before an officer duly authorized for that purpose. They shall be allowed such compensation as the Secretary of the Interior may prescribe, not exceeding ten dollars per day while actually employed; and such traveling and other necessary expenses as the Secretary may authorize and the Secretary of the Interior shall also provide them with necessary clerical force by detail or otherwise.

"§ 8. That the sum of ten thousand dollars or so much thereof as may be necessary is hereby appropriated to carry into effect the provisions of this act, except that no portion of said sum shall be used in making payment for land entered hereunder, and the disbursements therefrom shall be refunded to the Treasury from the sums which may be realized from the assessments made to defray the expense of carrying out the provisions of this act." 26 Stat. 110, c. 207.

The complaint shows that the appellees are the Trustees of Townsite Board Number Six, duly constituted and appointed by the Secretary of the Interior, and assigned to the townsite of West Guthrie, Oklahoma Territory, and had acquired the legal title to the western half of section eight, of township sixteen, north of range two, in Logan County, in that Territory.

Bockfinger, claiming to have become entitled, under the homestead laws of the United States, to the southwest quarter of that land—which was embraced within the townsite boundary—brought this suit in a territorial District Court against the appellees as Townsite Trustees. The relief sought was a decree that the Trustees hold the title in trust for his use and benefit, and be compelled to convey to him.

The defendants demurred to the complaint upon several grounds, among others upon the ground that the court had no jurisdiction of the subject of the action nor of the defendants

in their capacity as Townsite Trustees. The demurrer was sustained, and the plaintiff, electing to stand on his complaint, the suit was dismissed. Upon appeal to the Supreme Court of the Territory, the decree of the District Court was affirmed. 10 Oklahoma, 488.

Mr. *James R. Keaton* for appellant. *Mr. John W. Shartel*, *Mr. Frank Wells*, *Mr John H. Cotteral* and *Mr. C. G. Hornor* were on the brief.

*Mr. Horace Speed* and *Mr. Marsden C. Burch* for appellees.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

The decisive question in the case is whether the plaintiff's claim to the land can be made the subject of a suit against the Townsite Trustees as such. Upon a careful scrutiny of the provisions of the act of 1890 we are of opinion that this question must be answered in the negative. The plaintiff asked a decree declaring that the title acquired by the Trustees under the act of Congress for the use of townsite occupants be held in trust for and conveyed to him. But no such relief could have been granted if the title acquired by the Trustees was held by them in trust for the purposes of the act of Congress and if, in every substantial sense, so far as real ownership is concerned, the land still belonged to the United States.

That the title was so held by the Townsite Trustees is, we think, clear. They did not hold an indefeasible title as of private right with power to dispose of the land at will, but only as trustees for such occupants as should be ascertained, in the mode prescribed by the act of Congress, to be entitled to particular lots within the townsite boundary. The trust was not, in any sense, of a permanent character. Its creation by Congress was only a step towards the ultimate transmission of the title of the United States to occupants under the Township Act. The United States retained its hold on the land until the title by proper conveyances should pass absolutely from it or

from its officers or agents, the Townsite Trustees, to such occupants. When an occupant thus acquired title, any one who claimed that he was entitled to the land could litigate the matter with the occupant in some court of competent jurisdiction; for, as between the United States and the occupant, the former had then parted with its title.

It is suggested that, under this view, many years might elapse before the person to whom, as occupant, the land was awarded could be sued by the person claiming a superior right to that acquired by the Townsite Trustees for the use and benefit of occupants. This is true, but it cannot alter the fact that, under the act of Congress, the title remained, in every essential sense, in the United States, until conveyed to the occupant. The United States, as the primary owner of the land, could prescribe the terms upon which it could be disposed of to occupants. A suit against the Townsite Trustees to compel them, without regard to the act of Congress, to convey to one who was not an occupant within the meaning of that act, was a suit to compel them to convey land which really belonged to the United States. Such a suit, it is plain, might defeat the execution of the act of Congress.

The general principle was fully stated in *Johnson* v. *Towsley*, 13 Wall. 72, in which this court, after observing that it had firmly refused to interfere with the Land Department in its administration of the public lands, *so long as the title was in the United States,* said: " On the other hand, it has constantly asserted the right of the proper courts to inquire, *after the title had passed from the Government, and the question became one of private right,* whether, according to the established rules of equity and the acts of Congress concerning the public lands, the party holding that title should hold absolutely as his own, or as trustee for another."

This was the ground upon which the court proceeded in *McDaid* v. *Oklahoma*, 150 U. S. 209, in which case the question was as to the right of Townsite Trustees to withhold a deed pending an appeal to the Commissioner of the General Land Office. In that case it became necessary to declare the scope and meaning of the act of 1890.

After referring to a decision of the Land Department, under the act of 1890, to the effect that "the issue of the patent to Townsite Trustees under the act was not a disposition of the Government title, but a conveyance in trust to be held under the direction of the Secretary of the Interior," the court in that case, speaking by Chief Justice Fuller, said : " This proposition is denied, and it is insisted that the authority of the Secretary relates solely to public lands, the title to which is still in the United States, and that by the issue of the patent to Townsite Trustees the title passes and all control over the lands embraced therein is lost. Hence that in this case the title of the United States passed by the patent to the trustees, and that they held it thereafter in trust for the occupants, free from the control of the Land Department. Reference is made to *Moore* v. *Robbins*, 96 U. S. 530, and like cases, to the point that when a patent has been awarded, issued, delivered, and accepted, all right to control the title or to decide on the right to the title has passed from the Executive Department of the Government. But those cases refer to the legal title directly and finally conferred, and the principle invoked can only be applicable on the assumption that by the townsite conveyance title was granted to the Oklahoma trustees for the purpose of divesting the Government of all authority and control over the final disposition of the property, and not for the purpose of putting title in the trustees as agents of the Government for the execution of the trust devolving upon them as such. Whether this assumption is justified or not must depend upon the terms and true construction of the act of May 14, 1890."

The court then examined the several sections of the act of 1890, and proceeded : " In the light of these provisions we perceive no reason for doubting that the trustees appointed by the Secretary under the act, and whose compensation and expenses were fixed by him, were agents of the Government for the purpose of carrying out the trust thereby created to the extent and as specified, and this included the ascertainment of the beneficiaries in the first instance and the transfer of the title to them. While on the final entry the title of the United States was to be conveyed to the trustees, such conveyance was

explicitly declared as made 'for the uses and purposes in the act provided,' and among these uses and purposes was the de-termination of controversies. between contesting claimants by the trustees, who were to administer oaths, pass on evidence, and keep a record of their proceedings, to be deposited in the Land Department. They unquestionably acted in that regard as the representatives of the Government, and their decisions were properly subject to that appeal to the Commissioner and the Secretary, for which the Secretary's regulations pro--vided. As matter of convenience, the trustees were the in-strumentality for the transmission of title in respect of lands disposed of to actual holders, while the Secretary, notwith-standing the patent, was the medium as to surplus lands, which he could not be if the legal title had definitively passed to the trustees by the patent for the whole site. The result is the same if the fourth section be construed as directing the Secretary to cause the trustees to execute the conveyances therein referred to. The trust upon which the title was held was to be discharged in accordance with the regulations, and was necessarily subject to the supervisory power of the Depart-ment of the Interior. Section 2387 of the Revised Statutes confirms this view, for the townsites there referred to were to be entered by the corporate authorities of the town, if incor-porated, or, if not, by the judge of the county court for the county in which the town was located, and the trust as to the disposal of the lots and the proceeds of the sales thereof was to be executed in accordance with such regulations as might be prescribed by the legislative authority of the State or Territory in which the town might be situated, while under this special. act, in reference to Oklahoma, the entry was to be made by trustees appointed by the Secretary and the trust conducted under such regulations as might be established by him. In the one case the Government parted with its connection with the land when the patent issued to the local authority; in the other, the Government retains its connection by having the entry made by its own agents, and the trust executed in the man-ner it directs. By the scheme of this act, the title is held in trust for the occupying claimants, it is true, but also in trust

*sub modo* for the Government until the rightful claimants and the undisposed of or surplus lands are ascertained."

. It is suggested that the question decided in the *McDaid* case was not the same as the one now under consideration. That is true, but the decision required the court to determine the meaning of the act of Congress of 1890; consequently, what was said in that case as to the scope of the act is pertinent here.

· Several cases were cited in argument as sustaining such a construction of the act of Congress as would authorize a suit like this. We allude to *In re Emblen*, 161 U. S. 52, 56; *Germania Iron Co.* v. *United States*, 165 U. S. 379; and *Payne* v. *Robertson*, 169 U. S. 323.

. In *Emblen's* case it appeared that pending a contest before the Secretary of the Interior between Emblen and Weed as to whom a patent should be issued for a tract of land in Colorado, Congress passed an act confirming Weed's entry and directing that a patent issue to him, which was done. Then Emblen sought by mandamus to compel the Secretary to rehear the case, and to decide the issue between him and Weed, independently of the act of Congress, which was alleged to be unconstitutional. This court, speaking by Mr. Justice Gray, said: " Such being the state of the case, it is quite clear that (even if the act of Congress was unconstitutional, which we do not intimate) the writ of mandamus prayed for should not be granted. The determination of the contest between the claimants of conflicting rights of preëmption, as well as the issue of a patent to either, was within the general jurisdiction and authority of the Land Department, and cannot be controlled or restrained by mandamus or injunction. After the patent has once been issued, the original contest is no longer within the jurisdiction of the Land Department. The patent conveys the legal title to the patentee ; and cannot be revoked or set aside, except upon judicial proceedings instituted in behalf of the United States. The only remedy of Emblen is by bill in equity to charge Weed with a trust in his favor. All this is clearly settled by previous decisions of this court, including some of those on which the petitioner most relies "—citing *Johnson* v. *Towsley*,

13 Wall. 72; *Moore* v. *Robbins,* 96 U. S. 530; *Marquez* v. *Frisbie,* 101 U. S. 473; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Steel* v. *Smelting Co.,* 106 U.. S. 447; *Monroe Cattle Co.* v. *Becker,* 147 U. S. 47; *Turner* v. *Sawyer,* 150. U. S. 578, 586. So far from militating against the doctrine of the *McDaid* case, the above observations by Mr. Justice Gray, speaking for the court in the *Emblen* case, sustain the views expressed in the previous case. The patent referred to in the *Emblen* case was a formal, regular patent, designed to pass the title of the United States, and to invest the patentee with all the rights of the United States in the land.

In *Germania Iron Co.* v. *United States,* 165 U. S. 379, 383, the question was whether the court could by decree, in a suit brought by the United States, cancel a patent that had been issued by inadvertence and mistake, and thereby restore the jurisdiction of the Land Department to determine such disputed questions of fact as involved the title to the land patented. That suit was maintained and the patent was cancelled. It is clear that the decision has no bearing on the question now before us.

In *Payne* v. *Robertson* the question as to the right to maintain a suit directly against the Townsite Trustees for the purpose of divesting them of the title to the land in dispute does not appear to have been raised by the parties; it certainly was not decided by the court. The sole question, the court took care to say, was whether by reason of his entry into the Territory, and his presence there, under the circumstances stated, the plaintiff, who was a deputy marshal of the United States, was disqualified from making a homestead entry immediately upon the lands being opened for settlement. The court held against the plaintiff on that point, and that being conclusive of the case, the judgment of this court was placed entirely upon that ground. It was not necessary to go farther and decide the question here presented.

Nor is there anything in *Wilcox* v. *Jackson,* 13 Pet. 498, and *United States* v. *Schurz,* 102 U. S. 402, at all in conflict with the decisions in the above cases. Both the *Wilcox* and *Schurz* cases recognize the principle that after the title to public lands

has passed from the United States, that is, after the Land Department has performed the last act in the series necessary to pass the title of the Government, the courts will, as between parties asserting conflicting rights in such lands, determine, by appropriate judicial proceedings, which of the parties has the better right. But those cases equally recognize the principle that the courts will not interfere with the Land Department in its control and disposal of the public lands, under the legislation of Congress, so long as the title in any essential sense remains in the United States.

Without further reference to authorities, we adjudge that until the title to lands within any townsite boundary has been finally disposed of as provided in the act of 1890, no suit can be maintained against the Townsite Trustees to divest them of the title held by them in trust for occupants under that act; although a townside occupant, after receiving title under the act, may be sued by any one claiming to have acquired under the homestead laws a right to the lands prior and superior to that held by the Townsite Trustees for the use and benefit of townsite occupants.

The decree of the Supreme Court of Oklahoma is

*Affirmed.*

MR. JUSTICE WHITE dissented.

MR. JUSTICE McKENNA did not hear the argument of this case nor participate in the decision.