## SULLIVAN v. MAMMOTH OIL CO. et al.

Circuit Court of Appeals, Eighth Circuit.
October 25, 1927.

No. 6919.

1. **Trusts ⟐⟐107—To entitle complainant to decree declaring lease of oil lands by government to defendant held in trust for complainant, fiduciary relation between parties must be shown.**

To sustain suit to have lease of oil lands by the government to defendant declared held in trust for complainant, facts must be alleged which establish some fiduciary relation between the parties, and complainant must show that he, and not defendant, was entitled to the lease.

2. **Trusts ⟐⟐105—Claimant under mining laws of oil land withdrawn from entry, having preferential right to lease by relinquishing to United States, but who did not relinquish nor apply for lease, held to have no right to impose trust on lease to another (Leasing Act 1920, § 18 [30 USCA § 227]).**

Under Leasing Act 1920, § 18 (30 USCA § 227), providing that, on relinquishment to the United States within six months of all right, title, and interest claimed under the placer mining laws to oil or gas lands within the executive withdrawal order of September 27, 1909, and payment of royalty for oil or gas previously produced therefrom, the claimant should be entitled to a lease thereon, a claimant who did not relinquish, nor pay the royalty, and who made no application for lease to the Land Department, *held* to have no standing in a court of equity to impose a trust on a lease granted to another.

3. **Public lands ⟐⟐103(4)—While title to public lands remains in United States, courts will not interfere with its administration by Land Department.**

So long as title to public lands is in the United States, the courts will refuse to interfere with the Land Department in its administration.

4. **Public lands ⟐⟐103(4)—United States is necessary party to suit for patent or lease of public lands.**

To a suit to obtain a patent for, or lease upon, public lands, the United States is a necessary party.

Appeal from the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Suit in equity by Patrick Sullivan against the Mammoth Oil Company and others. From a decree dismissing the bill, complainant appeals. Affirmed.

John T. Bottom, of Denver, Colo., for appellant.

John W. Lacey, of Cheyenne, Wyo. (Herbert V. Lacey, of Cheyenne, Wyo., on the brief), for appellee Mammoth Oil Co.

Charles S. Thomas, of Denver, Colo. (George K. Thomas, of Denver, Colo., on the brief), for appellee Pioneer Oil & Refining Co.

Before STONE and VAN VALKENBURGH, Circuit Judges, and WILLIAMS, District Judge.

VAN VALKENBURGH, Circuit Judge. The appellant in this case alleges that by mesne conveyances he has succeeded to the rights of the original locators of placer mining claims to certain oil and gas bearing land situate in Natrona county, state of Wyoming, and containing what is now known as the Teapot Dome oil structure, included in naval petroleum reserve No. 3, Wyoming No. 1. It is further alleged that appellee Pioneer Oil & Refining Company wrongfully, illegally, and fraudulently represented to the Secretary of the Interior and the Secretary of the Navy that it had possessory title to said land as having been located as valid oil, or oil and gas, placer mining claims; that, with full knowledge of the validity of the claims of appellant, appellees procured from said Interior and Navy Departments a lease to the Mammoth Oil Company covering this and other lands in said naval petroleum reserve; that thereby a fraud was committed upon the government and upon appellant; that for the foregoing and other reasons this lease to the Mammoth Oil Company is void. Appellant prays that he may be decreed to be vested with a superior and paramount right, title, and interest as against appellees, and all persons claiming through them, to the exclusive possession, use, enjoyment, and development of the said placer mining claims involved, and that, if the lease from the United States to said Mammoth Oil Company be not forfeited, in so far as it relates to said placer mining claims, the appellee Mammoth Oil Company be decreed to hold the said lease in trust for the plaintiff as to each and every one of said oil placer mining claims; that appellant shall be decreed and adjudged to be entitled to the immediate, full, and exclusive possession and enjoyment of the whole of the premises in controversy, and shall be entitled to extract the oil, gas, and mineral contents of the premises in controversy to the full extent and in accordance with the terms and provisions of the said lease of the United States to said Mammoth Oil Company.

In the District Court appellees moved to dismiss upon the ground that the bill on its face showed that the title to said property is in the United States; that therefore the United States is an indispensable party to the controversy; and, further, that the bill

states no ground of relief in equity, or at all, in favor of appellant and against appellees; also that, so far as disclosed by said bill, "the question of whether the plaintiff or his assignors ever made proper location of the lands in controversy under the mining laws of the United States, or otherwise complied with the requirements of the said laws, or any of them, has never been decided by the Land Department of the United States, which department the government has provided as a special tribunal for the decision of such questions, and the jurisdiction of said questions can-not be taken from the department by the courts." Upon hearing this motion was sustained, and the cause dismissed, from which action of the trial court appellant prosecutes this appeal.

It may be noted that appellant bases his claim upon alleged locations made and perfected by his grantors and himself prior to the Leasing Act of February 25, 1920 (Comp. St. § 4640¼ et seq.). He asserts that by virtue thereof he was entitled to patent prior to said last-named enactment, and, under its terms, to the lease or leases provided for therein. The bill does not allege any application for patent or lease by himself or his predecessors in title. Asserting fraud and misrepresentation on the part of the appellees, and rights paramount to theirs, he asks that they be declared trustees for him with respect to the lease granted to them, and that he be invested as the lessee under that instrument with all the rights and obligations incidental thereto.

[1] In order to sustain a claim and to obtain relief of this nature, "it would be necessary to allege definite facts (not mere conclusions) sufficient to show some fiduciary relationship" between appellant and appellees. Hodgson v. Federal Oil & Development Co., 274 U. S. 15, 47 S. Ct. 502, decided April 11, 1927. But the bill in this case shows neither co-tenancy nor corelation of any kind. The claims are adverse. Appellees are charged with having wrongfully appropriated the property rights of appellant more in the nature of trespass than of breach of trust.

"In order to maintain a suit of this sort the complainant must establish not only that the action of the Secretary was wrong in approving the other lease, but that the complainant was himself entitled to an approval of his lease, and that it was refused to him because of an erroneous ruling of law by the Secretary." Anicker v. Gunsburg, 246 U. S. 110–117, 38 S. Ct. 228, 62 L. Ed. 603; Hodgson v. Federal Oil & Development Co. et al. (C. C. A. 8) 5 F.(2d) 442–446, affirmed 274

U. S. 15, 47 S. Ct. 502, 71 L. Ed. ——, opinion filed April 11, 1927; Devlin v. Central Wyoming Oil & Investment Co.. (C. C. A. 8) 20 F.(2d) 530.

Under the foregoing decisions, appellant is foreclosed from substitution under the lease to appellee Mammoth Oil Company.

[2] The bill contains the usual prayer for such further general relief as in equity and good conscience may be required. It is somewhat generally and indirectly stated in the bill that:

"The Secretary of the Interior of the United States and the Commissioner of the General Land Office of said Department of the Interior refused to permit those persons who had located oil placer mining claims within the boundaries of said oil structure or structures and petroleum reserve or reserves prior to the issuing or making of the first or temporary withdrawal order by the President of the United States, and the other order or orders creating said reserve or reserves, as did the original locators hereinbefore mentioned and referred to, to obtain patents to said mining claims from the United States, and this notwithstanding such original locators, or their executors, administrators or assigns were lawfully entitled to such patents; that for a long time after the said act of the President of the United States creating said naval petroleum reserve No. 3, Wyoming No. 1, for the use of the United States Navy, and long after the passage of the Act of Congress dated February 26, 1920, known as the oil and gas leasing bill, the Secretary of the Interior and the Secretary of the Navy refused to lease any of the lands within said naval reserve, and this notwithstanding that bona fide locators of lands as oil placer claims within the boundaries of said naval reserve were willing to quitclaim said placer mining claim to the United States upon receiving leases or prospecting permits under the terms of said act of Congress."

This language falls far short of alleging that appellant ever made application for patent or lease, nor is any alleged action of the Secretary of the Interior or of the Navy before us for review. Appellant's rights, if any, are those derived from the oil and gas leasing bill of February 25, 1920, and preserved to him by the Act of June 4, 1920, (41 Stat. 812), which directed the Secretary of the Navy to take possession of all property within the naval petroleum reserves on which there were no pending claims or applications for permits or leases under the provisions of the Act of Congress approved February 25, 1920, and to conserve, develop, use and oper-

ate the same in his discretion directly or by contract or lease or otherwise.

The Act of February 25, 1920, aforesaid, provides:

"Sec. 18. That upon relinquishment to the United States, filed in the General Land Office within six months after the approval of this act, of all right, title, and interest claimed and possessed prior to July 3, 1910, and continuously since by the claimant or his predecessor in interest under the pre-existing placer mining law to any oil or gas bearing land * * * embraced in the executive order of withdrawal issued September 27, 1909, and not within any naval petroleum reserve, and upon payment as royalty to the United States of an amount equal to the value at the time of production of one-eighth of all the oil or gas already produced * * * the claimant, or his successor, if in possession of such land, undisputed by any other claimant prior to July 1, 1919, shall be entitled to a lease thereon from the United States for a period of twenty years, at a royalty of not less than 12½ per centum of all the oil or gas produced. * * *

"All such leases shall be made and the amount of royalty to be paid for oil and gas produced, except oil or gas used for production purposes on the claim, or unavoidably lost, after the execution of such lease shall be fixed by the Secretary of the Interior under appropriate rules and regulations. * * * In case of conflicting claimants for leases under this section, the Secretary of the Interior is authorized to grant leases to one or more of them as shall be deemed just. All leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear. * * *" 30 USCA § 227.

[3] Appellant has not relinquished to the United States all his right, title and interest claimed and possessed prior to July 3, 1910, and continuously since by him or his predecessor, nor paid as royalty to the United States an amount equal to the value, at the time, of one-eighth of the oil or gas already produced. He has, therefore, under the terms of the act not shown himself to be entitled to a lease from the United States. Furthermore, at the time this suit was brought, the time within which application for lease could be made had expired. In any event, such application must be made in the forum which Congress has created for that purpose. Whether the right to a patent still exists is not here for decision, but, if it were, the consideration of appellant's rights must be ad-

dressed to that department of the government which has primary jurisdiction over such matters. So long as the title to public lands is in the United States the courts will refuse to interfere with the Land Department in its administration. Boekfinger v. Foster, 190 U. S. 116–121, 23 S. Ct. 836, 47 L. Ed. 975; Marquez v. Frisbie, 101 U. S. 473, 474, 25 L. Ed. 800.

"This court has with a strong hand upheld the doctrine that so long as the legal title to these lands remained in the United States, and the proceedings for acquiring it were as yet in fieri, the courts would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere." United States ex rel. McBride v. Schurz, 102 U. S. 378–395 (26 L. Ed. 167).

Since the foregoing was written, the Supreme Court has affirmed the judgment of this court, declaring void the lease to the Mammoth Oil Company, to the enjoyment of all rights under which lease, appellant claims to be entitled. This action of the court of last resort, as was to be anticipated, disposes of this alternative relief prayed in appellant's bill.

[4] It appears, finally, that whether the objective of appellant be lease or patent the United States is a necessary party, and application must first be made to the proper department of government before relief can be sought in the courts.

It follows, from what has been said, that the action of the trial court in dismissing the bill was right, and its decree should be affirmed. It is so ordered.