OKLAHOMA CITY v. WAINWRIGHT, Adm'r, et al.

No. 32530.   Oct. 21, 1947.

Rehearing Denied Dec. 2, 1947.

*187 P. 2d 226.*

A. L. Jeffrey, Municipal Counselor, and Arthur Leach, Asst. Municipal Counselor, both of Oklahoma City, for plaintiff in error.

W. F. Kyle, W. K. Garnett, and Chas. H. Garnett, all of Oklahoma City, for defendants in error.

DAVISON, V.C.J. In this case plaintiff seeks to recover the value of land taken and occupied by the city of Oklahoma City for municipal park purposes, and is one of that class of cases we have heretofore designated Civic Center Cases.

On March 28, 1891, Joseph C. Graeter, whose administrator is the plaintiff herein, and Rosa Graeter, his wife, now Rosa A. McDonald, an intervener herein, were in possession of lots 17 and 18, block 21 in the Original Townsite of Oklahoma City. The official plat book, kept by the townsite trustees as a record of those persons in possession of, and entitled to a patent on each particular lot in Oklahoma City, showed Joseph C. Graeter to be the owner of the lots here involved. The legal title to the property was then held by said townsite trustees under a patent from the United States Government to them, dated October 11, 1890, by the terms of which, title was held "in trust for the several use and benefit of the occupants of the townsite of Oklahoma City." On that date, said parties conveyed the south 40 feet of the lots to the Choctaw Coal & Railway Company by quitclaim deed wherein it was provided that in case of abandonment of said premises for railroad purposes, by said second party, its successors or assigns, the same would revert to the grantors, their heirs or assigns.

Subsequently, said parties for a good and valuable consideration, sold and delivered possession of the remainder of said lots to Arthur Morrison, whose wife and sole heir is Mary M. Morrison, an intervener herein, and on October 7, 1892, the townsite trustees executed to him a deed conveying the entire two lots. Morrison later sold the north 100 feet of the lots but never executed any instrument relative to the south 40 feet.

In 1891 the railway company constructed its line across the south 40 feet of these lots and remained in possession of the same until succeeded by the Choctaw, Oklahoma & Gulf Railroad Company, who subsequently leased the property to the Chicago, Rock Island & Pacific Railway Company. On December 4, 1928, these two latter companies conveyed said property by quitclaim deed to the city of Oklahoma City, the defendant herein, but not until December 4, 1930, did said defendant go into possession thereof for the purpose of using the same as a part of its public park system.

On February 12, 1945, plaintiff, as administrator of the estate of Joseph C. Graeter, who died in 1900, after being divorced from Rosa A. Graeter, now Rosa A. McDonald, brought this action against the defendant in the nature of reverse condemnation to recover the value of said property. Commissioners were appointed and, to their report fixing the value of the property at $9,000, the defendant filed exceptions and objections, denying the plaintiff's right to compensation. Subsequently, Mary M. Morrison, the widow and sole heir of Arthur Morrison, intervened,

claiming the ownership and right to possession of the property. At the time of the trial and after the introduction of the evidence on behalf of plaintiff and intervener, and after the presentation of a demurrer thereto by the defendant, Rosa A. McDonald was permitted, over defendant's objection, to intervene, alleging ownership of a one-half interest in the property by reason of the provisions of the deed to the railway company, and adopting all the proceedings had in the case to that time. Defendant's demurrer to the evidence of Mary M. Morrison and motion for judgment against her were sustained, and the judgment against her was not appealed from and has become final.

The defendant's demurrer to the evidence of the plaintiff and intervener, Rosa A. McDonald, and motion for judgment against them were overruled, and judgment for them against the defendant in the amount fixed by the commissioners was rendered, from which this appeal has been perfected.

Two propositions are presented by the appellant: First, that Joseph C. Graeter, deceased, and Rosa A. McDonald never acquired a title to said lots sufficient to support a judgment in their favor; and, second, that in any event the action must be prosecuted by the heirs of Joseph C. Graeter, deceased, his administrator having no authority to maintain this action.

Numerous cases dealing with the defendant's acquisition of other parts of this railroad right of way have heretofore been before this court and many questions relative thereto have been determined. Each contains a complete analysis of the rules of law therein applied and there is no need of repeating it other than by a statement of the rules herein applicable.

Except as hereinafter discussed, the deed from the Graeters to the railway company conveyed a determinable fee upon condition subsequent and all that the grantors owned thereafter, until the happening of such condition, was a possibility of reverter, which was not alienable on or prior to October 7, 1892, the date of the trustees' deed to Arthur Morrison. Noble et al. v. City of Oklahoma City, 191 Okla. 20, 127 P. 2d 843, following Noble et al. v. City of Oklahoma City, 297 U. S. 481, 80 L. Ed. 816, which reversed Noble et al. v. City of Oklahoma City, 172 Okla. 182, 44 P. 2d 135; Oklahoma City v. Local Federal Savings & Loan Association, 192 Okla. 188, 134 P. 2d 565; Jones v. Oklahoma City, 193 Okla. 637, 145 P. 2d 971; Fuhr v. Oklahoma City et al., 194 Okla. 482, 153 P. 2d 115.

Had the townsite trustees deeded the legal title to the Graeters and then had their deed to the railway company been executed, this case would fall squarely within our opinions in the above-cited cases. But the Graeters, at the time of the deed to the railroad, did not have the legal title, nor was it later conveyed to them.

At the time of the deed to the railway company the legal title had been conveyed by patent to the said trustees in trust for the several uses and benefits of the occupants of the townsite. The Graeters were such occupants of the lots in question, and the owners of an interest which they could "sell, convey or encumber." City of Guthrie v. Beamer, 3 Okla. 652, 41 P. 647 (and cases therein cited). The legal title was in the trustees "in trust for the occupying claimants, it is true, but also in trust sub modo for the government until the rightful claimants and the undisposed of or surplus lands are ascertained." McDaid v. Oklahoma, 150 U.S. 209, 37 L. Ed. 1055; Bockfinger v. Foster, 190 U.S. 116, 47 L. Ed. 975.

However, the interest which the Graeters originally had in the property because of possession was such that, if still owned by them after the trustees' deed to Morrison, it was sufficient that they could have maintained a suit in the "proper courts to inquire,

after the title had passed from the government, and the question became one of private right, whether according to the established rules of equity and the Acts of Congress concerning the public lands, the party holding that title should hold absolutely as his own or as trustee for another." Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485.

This possessory interest, or preferential right to trustees' deed, or whatever it might be called, the Graeters conveyed in two parts; their interest in the south part to the railroad; their interest in the north part of Morrison. Although the trustees' deed to the latter embraced both lots in their entirety, indicating a previous conveyance by the Graeters of their entire remaining interest therein to him, they could not, under the laws in effect at that time, convey to him any interest in the south part of the lots. Jones v. Oklahoma City, supra; Fuhr v. Oklahoma City, supra.

The only thing the Graeters owned with reference to that south part, after the deed to the railway company, was a power to compel a reconveyance to the grantors by the grantees, upon the happening of the condition subsequent set out in said deed. Oklahoma City v. Local Federal Savings & Loan Ass'n, supra.

Therefore, at all times, from the date of the trustees' deed to Morrison until the abandonment of the property for railroad purposes, the railway company and its successors were the only persons who could maintain an action to quiet title against Morrison or enforce the trust, by which he held legal title. They, and not the Graeters, were the ones owning the equitable title and in possession. They did not see fit to bring such suit, but remained in possession, with all the rights conveyed, and burdens imposed, by the deed from the Graeters. Neither was their interest therein, nor that of their grantors, ever questioned or attacked in any manner by Morrison.

There is another reason why the present owners of Graeters' rights are entitled to recover from the defendant. The defendant, on December 4, 1928, purchased from the remote grantees of the Graeters, their title to this property, and by virtue thereof went into possession two years later. There was then established a privity between the Graeters and the defendant, for, as we said in Green v. Wahl, 117 Okla. 292, 246 P. 419:

"The term 'privity' denotes successive relationship or ownership to the same property from a common source. . . ."

This action is in the nature of ejectment wherein the relief sought, in lieu of possession, is in the nature of that for conversion. The proof required is measured by the rules of the former. The United States Supreme Court, in Chavez et al. v. De Bergere, 231 U.S. 482, 58 L. Ed. 325, quotes with approval from Tyler on Ejectment (p. 543) as follows:

" 'There is a class of cases in which the defendant is not permitted to controvert the title of the claimants in an action of ejectment on the ground of estoppel. These are cases where a privity exists between the defendant and the plaintiff, or those from whom he derives title. If a privity in estate has subsisted between the parties, proof of title is ordinarily unnecessary on the part of the plaintiff, for the reason that a party is not permitted to dispute the title of him by whom he has been let into possession. In all these cases, therefore, the proof is directed to the question as to whether such a relationship exists between the parties as to operate as an estoppel, and thereby supersede the necessity of introducing any evidence to establish the title of the claimant.'

"And again (p. 559): 'Although, strictly speaking, the relation of landlord and tenant is not created between vendor and vendee, yet the vendee, in ejectment by the owner against him, is absolutely estopped from either showing title in himself, or setting up an outstanding title in another; and the

same rule applies to one coming into possession under the vendee, either with his consent, or as to an intruder.'"

Very similar in many respects to the instant case are: Cowell v. Colorado Springs Co., 100 U.S. 55, 25 L. Ed. 547, and Stevens v. Galveston H. & S. A. Ry. Co. (Tex. Civ. App.) 169 S.W. 644. The rule quoted above seems universal and has been written in different words in almost all jurisdictions.

If the title of the vendor is defective and the purchaser is compelled to acquire an outstanding title, which inures to the benefit of the seller, the purchaser is entitled to be reimbursed for what he has reasonably expended in acquiring it. Herron v. Harbour, 75 Okla. 127, 182 P. 243.

The defendant herein purchased the title or interest of the Graeters' grantees. It could only be questioned by Morrison and his successors. That right has been finally adjudicated in defendant's favor. Therefore, the defendant purchased a fee determinable upon a condition subsequent which has now occurred and terminated that title.

The other question raised is as to the proper party plaintiff. What was owned by Joseph C. Graeter at the time of his death was the possibility of reverter. In defining it, the Illinois court, where the condition of use was for church purposes, said:

"It is an interest that is inherited . . . and did not originate at the time the property ceased to be used for church purposes." North v. Graham et al., 235 Ill. 178, 85 N.E. 267.

Originally at common law it could not be inherited, but the right of re-entry could be exercised by the executors and administrators as personal representatives of the creator of the "power", as we have designated it in our former opinions, above cited. Subsequently, it could be exercised by the heirs, only as representatives of the deceased. In Sheppard's Touchstone of Common Assurances, it was said "that none may take advantage of a condition but parties and privies in right and representations, as heirs, executors, etc., of natural persons. . ."

Later it descended to heirs, as of date of the happening of the condition, and then to heirs as such, as of the date of the death of the creator or grantor. This was the holding in North v. Graham, supra.

Since now it passes to an heir, prior to the happening of the condition it constitutes part of the estate of the deceased and is "property" as that term is used in our statute:

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration." (84 O.S. 1941 § 212.)

Thus, the right of re-entry and the right to possession of the property here involved could be exercised by the administrator under either of two theories: that he was the representative of and in privity with Joseph C. Graeter, deceased; or that if the right passed to the heirs, it did so "subject . . . to the possession of any administrator. . . ."

Having such right, he was the proper person to maintain this action for the benefit of the heirs of his decedent.

The judgment is affirmed.

HURST, C.J., and BAYLESS, WELCH, and CORN, JJ., concur. RILEY and GIBSON, JJ., dissent.