**496**

ALEKNAGIK NATIVES LIMITED, Aleknagik City Council, Aleknagik Village Council, Ekwok Natives Limited, Ekwok City Council, Ekwok Village Council, Nondalton Native Corporation, Nondalton City Council, Nondalton Village Council, Appellants,

v.

Cecil D. ANDRUS, Secretary of the Interior, George E. M. Gustafson, Townsite Trustee; Robert Kesling, Anne Kesling, Vincent McClelland, and all others similarly situated, Appellees.

No. 78–2986.

United States Court of Appeals,
Ninth Circuit.

April 7, 1980.

On Petition for Rehearing June 2, 1981.

James F. Vollintine, Anchorage, Alaska, for appellants.

Mary Ann Walsh, Dept. of Justice, Washington, D.C., argued, Jacques B. Gelin, U.S. Dept. of Justice, Washington, D.C., on brief, for appellees.

Before CHAMBERS and TANG, Circuit Judges, and THOMPSON,* District Judge.

TANG, Circuit Judge:

The plaintiffs, three native Alaskan village corporations organized under the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §§ 1601–1628, and the village and municipal councils for those villages, filed a quiet title and ejectment action contesting the Secretary of the Department of the Interior's (Secretary) interpretation of ANCSA to allow non-native entry, upon townsite lands that were unoccupied at the date of ANCSA's enactment. Besides the Secretary, also named as defendants were the townsite trustees and three non-native persons, as alleged representatives of a class who have entered or intend to enter townsite lands under color of the Alaska Native Townsite Act (ANTA), of May 25, 1926, 44 Stat. 629, 43 U.S.C. §§ 733–736 (repealed), or the Townsite Act of March 3, 1891, 26 Stat. 1099, 43 U.S.C. § 732 (repealed). The district court refused class certification, denied the plaintiffs' motion for a preliminary injunction to enjoin further encroachment upon the townsites, and dismissed the action for failure to exhaust administrative remedies. On the plaintiffs' appeal we find that the district court incorrectly dismissed the complaint and should have granted preliminary injunctive relief.

In 1960 and 1961, the plaintiffs applied to the Bureau of Land Management for administration of their villages as townsites under § 3 of ANTA, 43 U.S.C. § 735. Under ANTA procedures, after an application has been made, the Secretary appoints a trustee who determines whether the proposed site qualified for townsite status. If so, the Trustee would then make an application for survey. The BLM then surveys the land and subdivides it into the townsite under the joint guidance of the trustee and village council. After the approval of the survey, the Secretary then issues patents for the surveyed townsite lands to the trustee, and individual members of the tribe could obtain lots within the townsite. Accordingly, after the surveys of the three proposed townsites were approved in this case, the Secretary issued patents to the trustee and the trustee made lot awards to the townsite occupants who occupied lots on the date of the approval of the subdivisional survey.

Under § 11(a)(1) of ANCSA, 43 U.S.C. § 1610(a)(1), public lands in and around Native villages are withdrawn, "subject to valid existing rights," from all forms of appropriation under the public land laws. The gravamen of the plaintiffs' complaint is that, upon its enactment, ANCSA withdrew all unsurveyed and unsubdivided lands within the townsites and, therefore, these lands were no longer open to settlement by non-natives. The plaintiffs thus contend that the Secretary who ruled that the trustee's entry constituted a valid existing right

* Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

and directed the Natives not to select any lands within the townsites during the three-year period designated for selection under § 12(a) of ANCSA, 43 U.S.C. § 1611(a), cannot issue ANTA patents to non-Natives who commenced occupancy after the enactment of ANSCA.

In addition to their primary claim, the plaintiffs raise a number of other claims designed to exclude non-Natives from encroaching upon these townsite lands. Thus, they alleged that the Secretary violated procedural requirements of ANCSA, 43 U.S.C. § 1624, by failing to publish ANCSA land selection regulations; that the Secretary failed to communicate with the plaintiffs on their rights to select land as required by 43 U.S.C. § 1601(b); that the Secretary breached his fiduciary obligation to the plaintiffs by applying regulations promulgated to govern non-Native townsites to Native (ANTA) townsites; and that under ANTA, townsites in the Native villages must be administered exclusively for the benefit of Natives. The plaintiffs sought a wide variety of declaratory and injunctive relief, including a deletion from the patents issued by the Secretary to the Trustee of all land that was unsubdivided and unoccupied on the date of ANCSA's enactment. The plaintiffs also moved for a temporary restraining order and a preliminary injunction closing the townsites to further entry during the pendency of the law suit. The district court denied the injunction and dismissed the suit for failure to exhaust administrative remedies. A motions panel of this court issued an order pending appeal that directed the Secretary to prevent non-Native entries on townsite lands and to inform members of the public that the lands are not open to entry, and enjoined him from granting any patent or interest in the townsite lands.

## I.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Under the doctrine of exhaustion of administrative remedies, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938).

The basic purpose of the doctrine of exhaustion of administrative remedies is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies. *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972); *Marshall v. Burlington Northern Inc.*, 595 F.2d 511, 513 (9th Cir. 1979). Although exhaustion of administrative remedies is typically required as a condition for judicial review, the requirement is not absolute. *See, e. g., White Mountain Broadcasting Co. v. FCC*, 194 U.S. App.D.C. 355, 359, 598 F.2d 274, 278 (D.C. Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979). The doctrine must be applied in each case with an understanding of its purposes and the particular administrative scheme involved. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). Where pursuit of administrative remedies does not serve the purposes behind the exhaustion doctrine, the courts have allowed a number of exceptions. Thus, exhaustion is not required if administrative remedies are inadequate or not efficacious, *see American Federation of Government Employees, Local 1668 v. Dunn*, 561 F.2d 1310, 1314 (9th Cir. 1977), *Humana of South Carolina, Inc. v. Califano*, 191 U.S.App.D.C. 368, 379, 590 F.2d 1070, 1081 (D.C.Cir. 1978); where pursuit of administrative remedies would be a futile gesture, *see Pence v. Kleppe*, 529 F.2d 135, 143 (9th Cir. 1976); *Porter County Chapter of the Izaak Walton League of America, Inc. v. Costle*, 571 F.2d 359, 363 (7th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115 (1978). Where irreparable injury will result unless immediate judicial review is permitted, *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978); or where the administrative proceeding would be void, *see Winterberger v. Teamsters, Local Union 162*, 558 F.2d 923, 925 (9th Cir. 1977).

Unless statutorily mandated, application of the doctrine is in the sound discretion of the courts. *See Eluska v. Andrus*, 587 F.2d 996, 999 (9th Cir. 1978); *Montgomery v. Rumsfeld*, 572 F.2d 250, 253–54 (9th Cir. 1978). In deciding how to exercise its discretion, the court should balance the litigant's need for judicial resolution against the agency's interests in having an opportunity to make a factual record and exercise its discretion without the threat of litigious interruption, in discouraging frequent flouting of the administrative process, and in correcting its own mistakes to obviate unnecessary judicial proceedings. *Montgomery*, 572 F.2d at 253; *United States v. Newmann*, 478 F.2d 829, 831 (8th Cir. 1973).

■ A number of considerations lead us to conclude that the district court erred in requiring the plaintiffs to pursue administrative remedies.

Administrative review of decisions relating to disposition of townsite land is potentially available through two administrative boards, the Interior Board of Land Appeals (IBLA) and the Alaska Native Claims Appeal Board (ANCAB). *See Valid Existing Rights under the Alaska Native Claims Settlement Act*, 85 Interior Dec. 1, 3 (1977). IBLA decides the correctness of Department of Interior decisions relating to the use and disposition of public lands and their resources as well as the use and disposition of mineral resources in certain acquired lands of the United States. 43 C.F.R. § 4.1(3). ANCAB considers Interior decisions in matters relating to land selection arising under the Alaska Native Claims Settlement Act. 43 C.F.R. § 4.1(5).

Resort to either of these boards in this case would be futile. The Secretary has made clear his position that the term "valid existing rights" must be interpreted to mean that unsurveyed townsite lands were not withdrawn for selection under ANCSA. For example, the acting Secretary of the Interior approved a BLM memorandum on the subject that contained the following discussion:

> There are now pending before the Bureau's Anchorage Office a number of applications for survey and entries or applications for patent by the Townsite Trustee on behalf of the Native occupants of certain Alaska villages or towns, under the regulations in 43 CFR 2564. The application for survey as a townsite, when filed, is considered to segregate the lands involved. The interest of the Trustee, on behalf of the occupants, therefore constitutes a valid existing right to the lands within the inchoate townsite, within the meaning of Sec. 11(a)(1) of the 1971 act, *supra*.
>
> In those cases where an application for a townsite survey is on file, or where the Trustee had made application for patent or final entry has been made by him, and the lands are therefore segregated, all before December 18, 1971, we propose to instruct the Townsite Trustee to complete his trust pursuant to the regulations in 43 CFR 2564, under the authority of the 1926 Act, *supra*, and other applicable law. Upon approval of the plats of survey for these townsites the Trustee will receive a patent for the surveyed lands and will thereafter issue deeds to the lot occupants, and to each such municipality for the unoccupied and unclaimed lots in the townsite, upon incorporation of the municipality under Alaska law.

*See also Valid Existing Rights under the Alaska Native Claims Act*, 85 Interior Dec. 1, 5–6 (1977).

Not only does the Secretary's established position render administrative review meaningless as a practical matter, but in fact both IBLA and ANCAB are legally foreclosed from overruling the Secretary's position. Under IBLA's regulations, 43 C.F.R. § 4.410, any party who is adversely affected by a BLM decision does not have a right to appeal to IBLA where that decision has been approved by the Secretary. There is no analogous limitation on who may appeal to ANCAB. ANCAB, however, has apparently imposed a similar limitation on itself. *See Appeal of Wisenak, Inc.*, 83 Interior Dec. 496, 498–99 (1976) (ANCAB does not have jurisdiction to adjudicate the Secretary's authority to withdraw and reserve

public lands for utility corridor under § 17(a) of ANCSA). Furthermore, the Secretary has the power to take jurisdiction at any time of a case being considered by ANCAB, see 43 C.F.R. § 4.5(a)(1), and to review all ANCAB decisions, see 43 C.F.R. § 4.5(a)(2). In short, resort to either Board would be futile in light of the Secretary's position.

Moreover, it appears that administrative remedies would be inadequate. In the complaint, the plaintiffs requested that the court delete from the patents any lands unoccupied or unsurveyed at the time of ANCSA's enactment. In a case similar to this one, ANCAB held that it did not have jurisdiction to hear a challenge to the issuance of the patents:

> As to the issue of determining jurisdiction, the Board accords a final patent issued to a third party by the State of Alaska prior to ANCSA the same dignity as a Federal patent. The proper forum to adjudicate the status of such an interest is in a judicial proceeding and the Board lacks jurisdiction to decide the issue. BLM's treatment of such interests is therefore unaffected by this decision.

*Appeals of the State of Alaska and Seldovia Native Association, Inc.*, 84 Interior Dec. 349, 375 (1977). In any event, there appears to be nothing that the plaintiffs can present to the administrative boards. Because the plaintiffs, at the Secretary's direction have never selected townsite lands, there is no decision of the BLM rejecting selection that can be reviewed.

Finally, the agencies' interest in first hearing this matter is not substantial. The plaintiffs' claim involving the meaning of ANCSA and ANTA are matters of statutory interpretation that are particularly within the judiciary's competence. *See McKart v. United States*, 395 U.S. 185, 197–99, 89 S.Ct. 1657, 1664–65, 23 L.Ed.2d 194 (1969). The fact-finding capacity of the agencies will do little to further this inquiry.

■ The plaintiffs raised a number of subsidiary claims in addition to their claim involving the withdrawal of public lands under ANSCA. Although arguably the entire action should be dismissed where there exists a claim requiring exhaustion that is dispositive of the action, in this case administrative consideration of the plaintiffs' subsidiary claims will not avoid the need to decide their primary claim. *Cf. Montana Chapter of Association of Civilian Technicians, Inc. v. Young*, 514 F.2d 1165, 1167 (9th Cir. 1975) (even though agency could not consider constitutional claim, exhaustion required because consideration of non-constitutional claims would obviate the need to reach constitutional issue). The district court may not have independently considered whether the plaintiffs should have exhausted their administrative remedies with respect to these subsidiary claims. On remand, the district court should consider, consistent with this opinion, whether exhaustion as to those other claims is required. It should retain jurisdiction of those claims in which exhaustion is unnecessary.

## II.

## PRELIMINARY INJUNCTION

■ The district court's denial of a motion for a preliminary injunction will be reversed only if the district court abused its discretion or based its decision upon an erroneous legal standard or clearly erroneous finding of fact. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132–33 (9th Cir. 1979); *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1331 (9th Cir. 1978).

In *Anaheim v. Kleppe*, 590 F.2d 285, 288 n.4 (9th Cir. 1978), the court reviewed the appropriate standards to be applied in determining whether injunctive relief is appropriate. Under the traditional formula, the relevant questions are:

> (1) have the movants established a strong likelihood of success on the merits; (2) does the balance of irreparable harm favor the movants; (3) does the public interest favor granting the injunction?

*Sierra Club v. Hathaway*, 579 F.2d 1162, 1167 (9th Cir. 1978). Under the alternative test announced by the court, a preliminary injunction may issue:

Upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to their merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Benda v. Grand Lodge of International Association,* 584 F.2d 308, 315 (9th Cir. 1978). *See Miss Universe, Inc.,* 605 F.2d at 1134; *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975).

■ The effect of *Inglis* was to require the issuance of a preliminary injunction upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Anaheim,* 590 F.2d at 288 n.4 (citations omitted). The alternative tests set forth by *Inglis* are not really two entirely separate tests but merely extremes of a single continuum. *Miss Universe, Inc.,* 605 F.2d at 1134; *Benda,* 584 F.2d at 315. The critical element in determining the test to be applied is the relative hardship of the parties. *Id.* If the balance of harm tips decidedly toward the plaintiff, the plaintiff need not show as robust a likelihood of success on the merits, although the plaintiff must at a minimum have a fair chance of success on the merits. *Id.* Thus, the necessary showing of likelihood of success on the merits decreases as the balance of hardships increases in favor of the movant. *Anaheim,* 590 F.2d at 288 n.4. Because both these elements tip decidedly toward the plaintiffs, we find that the district court abused its discretion in not granting preliminary relief.

### A. Probability of Success on the Merits

■ The plaintiffs contend primarily that ANCSA withdrew the unsurveyed land in their townsite from appropriation under the townsite laws. In response, the Secretary argues that the application for a townsite, made prior to ANCSA and before the townsite lands were surveyed and occupied, created valid existing rights in the trustee such that all lands segregated in the townsite application were not withdrawn under § 11 of ANCSA, 43 U.S.C. § 1610. The plaintiffs have a substantial probability of prevailing on this issue.

The plaintiffs' interpretation of the effect of ANCSA on unsurveyed and unoccupied lands is supported by the language of ANCSA. Under § 11, "public lands" are withdrawn, subject to "valid existing rights," in townships that comprise and surround Native villages. Under § 3(e) of ANCSA, 43 U.S.C. § 1602(e), "public lands" means all "Federal lands and interests therein located in Alaska."[1] The term "valid existing rights" is not defined.

In order to determine whether the trustee's entry into a townsite is a valid existing right, the nature of the trustee's interest must first be ascertained. The trustee is an employee of the Department of the Interior, and thus, is an agent of the government. Until third parties have acquired title, or at least taken steps to acquire title, from the trustee, the title to the townsite lands remains in the United States. See *Bockfinger v. Foster,* 190 U.S. 116, 23 S.Ct. 836, 47 L.Ed. 975 (1903). Since the trustee's interest in the land is a federal interest, it would be anomalous to say that the trustee's entry creates an independent valid existing right on behalf of the trustee, a federal agent. The trustee's entry does not alter the federal nature of the occupied lands, and the lands continue to be public

1. Section 3(e) of ANCSA, 43 U.S.C. § 1602(e): "Public lands" means all Federal lands and interests therein located in Alaska except: (1) the smallest practicable tract, as determined by the Secretary, enclosing land actually used in connection with the administration of any Federal installation, and (2) land selections of the State of Alaska which have been patented or tentatively approved under section 6(g) of the Alaska Statehood Act, as amended (72 Stat. 341, 77 Stat. 223), or identified for selection by the State prior to January 17, 1969.

lands. When Congress intended to remove federal interests from Native selection, it did so by specifically excepting them from the definition of public lands. *See* 43 U.S.C. § 1602(e); S.R.Rep.No. 405, 92d Cong., 1st Sess. 110(1971).

The logic of this construction is reinforced by the purpose of § 11. The land withdrawn by § 11 for selection by Natives is generally that land comprising and surrounding "Native villages." See § 1610(a)(1).[2] It would appear incongruous for Congress to withdraw these native villages and the land surrounding them from appropriation under public land laws and yet, at the same time, allow non-Natives to occupy and obtain lots within the townsites after ANCSA's enactment. Indeed, under § 11(a)(2)townships that "have been selected by . . . but not yet patented to, the State under the Alaska Statehood Act are withdrawn, subject to valid existing rights." If land selected but not yet patented under the Alaska Statehood Act is withdrawn from appropriation by ANCSA, it is logical to assume that Congress intended the same treatment for ANTA townsite land that had not yet been patented to individual landowners.[3]

The plaintiffs also cite considerable legislative history to show that Congress intended to preserve land surrounding Native villages from appropriation by third parties after the enactment of ANCSA. The Secretary cites no legislative history. Although, in the posture of this case, it is unnecessary to discuss this history at length, there is legislative history supporting the plaintiffs' position. For example, one senate report stated that it was necessary to withdraw the land surrounding native villages "to insure that these lands are protected from disposition to other parties pending a determination of the villages eligible for benefits under the Act." S.R.Rep. No.405, 92d Cong., 1st Sess., 136(1971); *see id.* at 75–76. According to the conference report accompanying the final version of ANCSA:

> Section 11 of the conference report withdraws lands around villages, including villages located on lands selected by or tentatively approved to the State. This section also provides for the withdrawal of in lieu lands adjacent to the 25 township area to insure that the land selection rights of Native Villages and Regional Corporations will be fully protected and will not be frustrated by competing State selections or the creation of new interests in lands under the public land laws.

H.R.Rep. 746, 92d Cong., 1st Sess. 43 (1971) *reprinted in* 1971 U.S.Code Cong. and Admin.News, pp. 2247, 2256.

In short, the language, purpose, and legislative history of § 11 strongly support the plaintiffs' position that § 11 withdrew for Native selection those townsite lands that were unsurveyed and unoccupied on the date of ANCSA's enactment. In response, the Secretary essentially argues that the trustee's interest in townsite lands is created when an application for the townsite is made. The timing of the trustee's interest in the land is irrelevant, however, unless the Secretary can show that the nature of the trustee's interest in the land is such that it survived the enactment of ANCSA.

There is, therefore, a substantial probability that the plaintiffs will prevail on the merits of this issue. Because success on

---

2. Native villages as defined in § 1602(c), consist of:

> [A]ny tribe, band, clan, group, village, community, or association in Alaska listed in sections 1610 and 1615 of this title, or which meets the requirements of this chapter, and which the Secretary determines was, on the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance), composed of twenty-five or more Natives.

3. Additionally, the use of the term "valid existing rights" in § 11(a)(2) indicates Congress did not intend that "valid existing rights" should encompass rights in land segregated for selection, but without further steps taken to secure its acquisition. Under the Secretary's interpretation of "valid existing rights", no land could be withdrawn under this section, because Alaska's selection of land would have created in it a valid existing right.

this claim will entitle the plaintiffs to the relief they seek, it is unnecessary that the court evaluate the plaintiffs' probability of success on the other issues.

### B. The Balance of Hardships

 The plaintiffs must still show that the balance of hardships tips in their favor. According to the plaintiffs, at least 80 persons have staked out lots in the townsites. The influx of non-Natives into the townsites has created friction and the possibility of violence among Natives who were led to believe, first by their application for a townsite and then by the passage of ANCSA, that ownership of the townsite lands belonged to them. They thus argue that an injunction to preserve the status quo against further non-native entry is necessary to reduce tensions, to prevent injury to the land caused by non-Native entry, and to minimize the number of non-Natives to be removed should the plaintiffs ultimately succeed on the merits.

The Secretary's response is unpersuasive. The Secretary conclusorily argues that the plaintiffs "have not shown irreparable injury." He offers nothing to suggest that the Secretary's own interests would be undermined by preservation of the status quo until resolution of this controversy on its merits. Nevertheless, there remains some uncertainty as to the hardship likely to occur if the preliminary injunction is not granted.

ANTA was repealed in October 1976, and the Secretary has ruled that new occupancy claims cannot be instituted after the date of the repeal. Thus, remaining at issue in the case are the rights only of those non-Native persons who commenced their occupancy of the land after the enactment of ANCSA and before the repeal of ANTA. At oral

argument, counsel for the parties represented that no patents have yet been issued to these occupants and that only a small number could potentially be issued.[4]

Thus, the potential harm to the plaintiffs from non-Native entry may not be substantial. The fact remains, however, that the Secretary will not be harmed if enjoined from granting deeds to non-Natives during the pendency of the suit. Because the plaintiffs have a substantial probability of success on the merits and the balance of hardships tips in their favor, the district court should have granted the preliminary injunction under any formulation of the governing standards. See Anaheim v. Kleppe, 590 F.2d 285, 288 n.4 (9th Cir. 1978).[5]

### III.

### CLASS CERTIFICATION

 The appellants challenge the district court's failure to certify a defendant class consisting of all non-Natives who have entered appellants' villages under ANTA since the enactment of ANCSA. See Fed. R.Civ.P. 23(b)(1)(B), 23(b)(2). The district court's decision must be upheld unless it was an abuse of its discretion. See Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

 The Secretary argues that the action cannot be maintained as a class action because the trustee is not a member of the proposed class and therefore cannot properly be designated as a representative of the proposed class. See Fed.R.Civ.P. 23(a); Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–51, 7 L.Ed.2d 512 (1962). With this we agree. It may be true that the trustee, as the named representative of the class, could fairly and adequately pro-

---

**4.** Apparently, many of the 80 non-Natives who staked out lots did so after the repeal of ANTA, and are not entitled to deeds under the Secretary's ruling.

**5.** The district court denied the injunction when it dismissed the complaint for failure to exhaust administrative remedies. In the order of dismissal the court noted that the Secretary

was willing to halt the issuance of patents if appellants would submit their claims to the administrative boards. The court then concluded that appellants had not demonstrated irreparable injury. To the extent this conclusion was based on the court's erroneous holding on the exhaustion issue, it was incorrect as a matter of law and thus an abuse of discretion.

tect the interests of the non-Natives seeking patents. *See* Fed.R.Civ.P. 23(a). Nevertheless, the trustee is not truly a member of the defendant class because the injury assertedly inflicted by the proposed class—occupation of townsite lots—is not the same injury assertedly inflicted by the trustee. Furthermore, the trustee, as a BLM employee and agent of the Government, may be required to take positions adverse to those of the non-natives.

 The rule is that a named representative for a plaintiff class must be injured in the same way as all members of the class, *see McCabe v. Atchison, Topeka & Santa Fe Ry. Co.,* 235 U.S. 151, 162-63, 35 S.Ct. 69, 71–72, 59 L.Ed. 169 (1914); *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). It follows that the representative of a class of defendants must have injured the plaintiffs in the same way that the class is alleged to have injured them. *See* 3B Moore's Federal Practice Paragraph 23.04[2], at 23–120 to 23–141 (2d ed. 1978). For this reason alone, the district court did not abuse its discretion in denying class certification.

The case is remanded to the district court with directions to reinstate the plaintiffs' complaint and to provide preliminary relief consistent with this opinion.

Before CHAMBERS and TANG, Circuit Judges, and THOMPSON,[*] District Judge.

TANG, Circuit Judge:

In his petition for rehearing, the Secretary contends that our decision here conflicts with this court's ruling in *City of Klawock v. Gustafson,* 585 F.2d 428 (9th Cir. 1978), thereby requiring him to convey land in Alaska to two different Native organizations in each of ninety-two Native communities. We do not share the Secretary's concern.

In *Klawock,* the city of Klawock objected to a townsite trustee's decision to deed subdivided lots to non-Natives and his refusal to deed vacant, undivided lots to the city.

The district court ruled that the city was not entitled to the lots occupied by the non-Natives, but indicated that it was entitled to the vacant lots. In the course of the city's appeal from the denial of its asserted right to the occupied lots, the Department of the Interior changed its policy to allow the trustee to award the vacant lots to the city, and the parties agreed to dismiss the appeal.

The attorneys for Klawock then petitioned the district court for an award of attorneys' fees, claiming that the value of the vacant lots created a "common fund" from which the fees could be paid. The district court denied the request, ruling that the city had prevailed only because of the Department's change of policy. On appeal from the denial of attorneys' fees, this court reversed, holding that the change of policy resulted from the district court litigation, that the litigation benefited cities throughout Alaska, and that the vacant, unsubdivided lots in Klawock would provide a common fund from which to pay the attorneys' fees.

The Secretary contends that *Klawock* conflicts with our present holding because some of the lands eventually designated as part of the common fund was unoccupied and unsubdivided on the date of ANSCA's enactment. At this procedural juncture, however, we find any conflict to be speculative.

We must, at the outset, emphasize the procedural posture of this case. Although the Secretary characterizes our decision as having ordered him to convey the challenged land to the plaintiffs, our decision merely requires that the *status quo* be maintained until this suit can be resolved on the merits. It is true that the plaintiffs have demonstrated a strong likelihood of success on the merits, but it still remains to be decided whether they will ultimately prevail.

[*] Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

Even assuming that the plaintiffs ultimately prevail on the merits, there should be no conflict between *Klawock* and a holding that unoccupied and unsubdivided land was withdrawn at the time of ANSCA's enactment.

First, a judgment favorable to the *Aleknagik* plaintiffs would affect the ownership of only the land in their respective communities and have no impact on the land of the other communities which are not parties to *Aleknagik*. It is an elementary rule of judgments that the disposition of a case affects only those who are actually parties to it. *See, e. g., Zenith Corp. v. Hazeltine*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969).

Despite this, it might appear that the *Aleknagik* litigation would actually affect land ownership elsewhere by establishing a legal precedent that necessarily would be applicable to any townsite land throughout Alaska that was vacant and unoccupied at the date of ANSCA's enactment. Indeed, such an assumption has apparently been made by both parties to this case. This assumption appears erroneous for reasons which follow. ANSCA gave eligible village corporations three years in which to make their selections of the withdrawn land. *See* 43 U.S.C. § 1611(a)(1). With the exception of the plaintiffs, who were allegedly prevented from making any selections of the challenged land, the record does not reveal that any other village corporation sought to select townsite land which had been patented to a trustee but was unoccupied and unsubdivided on the date of ANSCA's enactment. Under section 22 of ANSCA, 43 U.S.C. § 1621(h)(1), all withdrawals of the land which had not been selected under section 1611 terminated on December 21, 1975. This section thus negates any potential conflict between *Klawock* and our decision. The common fund in the *Klawock* case consisted only of vacant lands in the Klawock community; since Klawock is not included in the lands contested in *Aleknagik*, the vacant Klawock lots may be deeded or sold as if they were never withdrawn.

Second, our decision today does not conflict with *Klawock* even if the *Aleknagik* litigation does have a legal impact on land in other Native communities by establishing the principle that the unsubdivided, patented townsite lots throughout Alaska were withdrawn. The *Klawock* court was not asked to assess ANSCA's impact on townsite lands. By the time the case reached the *Klawock* court, the parties no longer disputed the issue of land title. All that was left for the court to decide was entitlement to the common fund. Although the court may have assumed that the cities had a right to the vacant lands, it never decided that issue. If the *Aleknagik* litigation eventually shows that some of those lands assumed to belong to the cities were in fact withdrawn for selection by the village corporations, then that determination, being the only actual litigation of the issue, must be controlling.

Apart from this, our decision in this case does not impede the ability of the district court as a practical matter to effectuate the *Klawock* judgment. The scope of the *Aleknagik* lawsuit is relatively narrow. The *Aleknagik* plaintiffs are but three of ninety-two village corporations, and they seek to prevent the trustee from issuing deeds to non-Natives who are occupying townsite lands which were *vacant* and *unsubdivided* on the date of ANSCA's enactment. The *Klawock* decision, however, only refers to *subdivided* lots. *See Klawock*, 585 F.2d at 430–431. The Secretary now represents, however, that many of the lots that were subdivided at the time *Klawock* was decided were not subdivided until after the date of ANSCA's enactment. Even so, the fact remains that the vacant lots that were within areas which were subdivided at the date of ANSCA's enactment may be sold to satisfy the award of attorneys' fees.

The Secretary also claims that our ruling here may require him to file numerous suits to cancel the deeds issued by trustees to persons (mostly Natives) who entered the unsubdivided areas after 1971. This concern is subject to the same analysis as above; this lawsuit should have a very limited impact. Furthermore, the plaintiffs'

action in this case is not directed at Native occupancy, no matter when that occupancy began. Moreover, according to the plaintiffs, very few Natives, if any, settled in the unsubdivided land now challenged by the plaintiffs. Based on the facts presently before the court, the dangers claimed by the Secretary are speculative.

Finally, the plaintiffs contend that *Klawock* should be overruled because, in effect, the Secretary misrepresented to the court that vacant lots in other townsites were being deeded to the cities. Although this is a serious charge, we suggest that the appropriate remedy is a motion in district court to reopen the judgment awarding attorney fees.

The petition for rehearing is denied.