William R. JANOWSKI and Robert H. Barnhisel, individually and on behalf of all others similarly situated, Plaintiffs-Appellees, Cross-Appellants,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND, William D. Joyce, John D. Kelahan, Anthony Curcio, Robert J. Baker, John H. Barranco and Roy M. Pride, Defendants-Appellants, Cross-Appellees.

Nos. 81–1340, 81–1359.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1981.

Decided March 8, 1982.

Rehearing and Rehearing En Banc Denied April 7, 1982.

932

Marvin Gittler, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Chicago, Ill., for defendants-appellants, cross-appellees.

Albert L. Grasso, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for plaintiffs-appellees, cross-appellants.

Before BAUER, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BROWN, Senior District Judge.*

BAUER, Circuit Judge.

The issue in this appeal is whether the International Brotherhood of Teamsters Local No. 710 Pension Fund (the Fund or Plan) as amended complies with the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Two Plan participants, William R. Janowski and Robert H. Barnhisel (collectively Janowski), initiated this action alleging that the amendments deprived them of benefits which vested before ERISA became effective. The suit ultimately proceeded as a class action on behalf of all pre-ERISA participants of the Fund whose early retirement benefits were, or might be, affected by the amendments.

The district court, 500 F.Supp. 21, approved some of the amendments and disapproved others. It held that the designation of 65 as the normal retirement age under the amended Plan was permissible. It found, however, that the methods adopted for calculating accrued benefits for pre-ERISA service, for part-time service, and for certain early retirement and vested retirement benefits were improper. It also found that the initial Summary Plan Description Booklet distributed to Plan participants explaining the revisions did not clearly advise them of the option to elect benefits under either the old or the new Plan, whichever was greater. For these reasons, the district court entered a permanent injunction enjoining the trustees of the Fund from revoking the option of any participant who

entered covered employment before July 1, 1976, to choose benefits under the prior Plan. It also awarded plaintiffs attorneys' fees in the amount of $142,485.00. Both sides have appealed. We affirm in part and reverse in part.

Each party assigns numerous errors. The trustees allege that plaintiffs may not bring this suit either as individuals or as class representatives. They attack the district court's finding that there was an implied accrual of benefits in the original Plan which had to be reflected in the formula adopted for computing pre-ERISA service credit and assert that the formula chosen to provide accrued benefits for part-time employees complies with the statute because it is both ratable and reasonable, as required by 29 U.S.C. § 1054(b)(3)(B). The trustees also maintain that they did not reduce any vested benefits available under the prior Plan as set forth in the July 1979 Summary Plan Description Booklet because participants enrolled in the pre-ERISA Plan may elect to receive the benefits under either Plan. Therefore, they argue that the injunction preserving this option was unwarranted. Finally, the trustees assert that the award of attorneys' fees is improper because the litigation has failed to benefit the entire class of Fund participants and has not added to the Fund's assets.

In contrast, Janowski maintains that 57 should have been designated as the normal retirement age because that was the normal retirement age under the prior Plan. He contends that the change from 57 to 65 deprives Fund participants of vested rights to: (1) reasonable actuarial reductions for benefits beginning before 57; (2) benefits beginning at 57 instead of 65; and (3) pre-retirement benefits between 47 and 57. Additionally, Janowski contends that if the class prevails on the issue of the normal retirement age the amount of the fee award should be increased to reflect this fact.

* The Honorable Wesley E. Brown, Senior Judge of the United States District Court for the District of Kansas, is sitting by designation.

## I

Initially, the trustees challenge Janowski's right to bring this action on several grounds and urge dismissal for lack of subject matter jurisdiction. They argue that this case is not ripe because no pre-ERISA Plan participant has applied for and been denied any benefits. The trustees maintain that the named plaintiffs cannot allege any concrete injury because they are not yet ready to retire and have never applied for early retirement benefits and that they do not have a common interest with the entire class of Fund participants. Additionally, the trustees allege that the exhaustion doctrine is applicable to ERISA actions and assert that Janowski has failed to pursue his administrative remedies.

The trustees' contention that the exhaustion doctrine applies to ERISA actions is persuasive. Although § 1132 provides that a civil action may be brought by a participant "to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132, it is silent as to whether exhaustion is a prerequisite for exercising this statutory right. While this issue has not yet been considered by this court, the Ninth Circuit has held that "sound policy requires the application of the exhaustion doctrine in suits under the Act." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980).

■ Assuming *arguendo* that the exhaustion doctrine should be applied to ERISA cases, the doctrine is not absolute, *White Mountain Broadcasting Co., Inc. v. FCC*, 598 F.2d 274 (D.C.Cir.), *cert. denied*, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979), and unless statutorily mandated, its application is committed to the sound discretion of the court. *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496 (9th Cir. 1980). Where exhaustion is not specifically required by the statute, the district court's discretionary decision may only be disturbed on appeal when there has been a clear abuse of discretion. *Medina v. Castillo*, 627 F.2d 972 (9th Cir. 1980).

■ Exhaustion has no relevance here, for the doctrine is only appropriate where it is necessary to develop a full factual record or to take advantage of agency expertise. *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496 (9th Cir. 1980). Thus, the exhaustion doctrine has been applied in ERISA cases only in situations where an individual has applied for and been denied current benefits. In contrast, this case concerns clarification of the right of an entire class to future benefits. This issue is solely a question of statutory interpretation and does not require a factual record. *See McKart v. United States*, 395 U.S. 185, 197–99, 89 S.Ct. 1657, 1664-65, 23 L.Ed.2d 194 (1968); *Frontier Airlines v. CAB*, 621 F.2d 369 (10th Cir. 1980). Since the reasons for the doctrine are not present, the district court did not abuse its discretion in waiving the exhaustion requirement.

■ We reject the trustees' contention that this case is a "battle of hypotheticals, a classic example of the difficulty of deciding a case concerning a complex, technical subject without the benefit of specific facts." Defendants-Appellants, Cross-Appellees' br. at 35. Janowski seeks a determination of the nature and scope of Plan participants' rights to future benefits. Section 1132 provides that a civil action may be brought "by a participant ... to clarify his rights to future benefits under the terms of the plan ...." 29 U.S.C. § 1132. This action is precisely the type of action contemplated by the statute.

■ Lastly, the trustees' argument that the named plaintiffs are inadequate class representatives because they have no common interest with all Fund participants ignores the fact that the class which Janowski purports to represent, and which the trial court certified, includes only "[a]ll persons who are now, or who were as of February 1, 1976, members of Local 710 of the International Brotherhood of Teamsters and who have accepted early retirement or intend to do so under the terms of the Pension Plan of said Local 710 and whose early retirement benefits were or will be affected by the amendments to the Plan made as of February 1, 1976." The named plaintiffs certainly have interests in common with

this class. The preliminary challenges to the right to bring this action fail.

## II

The technical issues and the specific sections involved in this case must be analyzed in light of the scope and spirit of ERISA as a whole. Designed to revamp private employee pension plans to ensure minimum vesting, funding, and insurance benefits, H.R.No. 1522, 93d Cong., 1st Sess. *reprinted in* [1974] U.S.Code Cong. & Ad.News 4639, 4647–48, ERISA is, of necessity, a highly complex and detailed statute. Three administrative agencies, the Internal Revenue Service (IRS), the Department of Labor, and the Pension Benefit Guaranty Corporation, are charged with insuring that employers amend their pension funds to conform to the statute.

The Fund involved here was created in 1955 pursuant to a collective bargaining agreement. It provided for retirement, survivor, disability, and death benefits for which the employer contributed on behalf of its employees. The Plan was amended on April 21, 1976, but was retroactively effective as of February 1, 1976. After the amendments, the Plan was submitted to the IRS and approved. Thereafter, in January 1978, a booklet describing the revisions and reprinting the text of the new Plan was published for Plan participants. The option of participants with pre-ERISA service to take early retirement benefits under the prior Plan did not appear in either the text of the Plan or the Plan description. These omissions were corrected in the revised booklet, distributed in July 1979, where the option was included in the text of the Plan and the Plan description.

Under the prior Plan a participant was entitled to benefits on the normal retirement date, the date on which the participant reached age 57 and had accumulated 20 years of credited service. The amended Plan retained the right to receive benefits at age 57 with 20 years of service but changed the designation from normal retirement to regular retirement and, pursuant to 29 U.S.C. § 1002(24) and 26 U.S.C. § 411(a)(8),[1] adopted a new normal retirement age of 65, applicable to participants who were not enrolled in the pre-ERISA Plan.

Since calculations of vesting and accrued benefits are based on the normal retirement age, the age designation significantly affects the amount of benefits the participant receives. Section 411(a)(8) defines normal retirement age as the earlier of: (A) the time a Plan participant attains normal retirement age under the Plan or (B) the later of the time a Plan participant attains 65 or accumulates 10 years of credited service. 26 U.S.C. § 411(a)(8). Janowski argues that subsection (A) mandates that the normal retirement age remain the same in the amended Plan as it was in the prior Plan. In contrast, the trustees read section 411(a)(8) to permit them to designate any age as the normal retirement age, subject to the limitation that it cannot be later than the date a participant attains age 65 unless the participant has not accumulated 10 years of credited service, in which case the participant reaches normal retirement age after 10 years of credited service. The trustees concede that participants in the pre-ERISA Plan have a right to benefits at age 57 after 20 years of credited service but emphasize that the right has been incorporated into the new Plan under the designation regular retirement. They assert that nothing in section 411(a)(8) requires that they designate an age less than 65 as the normal retirement age for participants who were not enrolled in the pre-ERISA Plan.

◼ Initially, we note that § 411(a)(8) has not yet been judicially interpreted. Therefore, in construing the section we are guided by the plain meaning of the lan-

---

1. Both 29 U.S.C. § 1002(24) and 26 U.S.C. § 411(a)(8) define normal retirement age as:
    (A) the time a plan participant attains normal retirement age under the plan, or
    (B) the later of—

    (i) the time a plan participant attains age 65, or
    (ii) the 10th anniversary of the time a plan participant commenced participation in the plan.

guage, *Atchison, T. & S.F. Ry. Co. v. United States*, 617 F.2d 485 (7th Cir. 1980), as well as Congressional intent. The legislative history to § 411(a)(8) indicates that in fashioning minimal requirements for private pension funds, Congress intended to increase the number of individuals participating in retirement plans, H.R.No. 93–807, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 4671, while at the same time promoting the financial integrity of those plans. H.R.No. 93–533, 93d Cong. 1st Sess. *reprinted in* [1974] U.S. Code Cong. & Ad.News 4652. Analyzing § 411(a)(8) in this light, it is clear that Congress intended the trustees, as fiduciaries, to balance desired benefits against economic realities. For this reason, the statute authorized any normal retirement age subject to the limitations of 65 years or 10 years of service. Under § 411(a)(8) the trustees certainly could have established a normal retirement age of less than 65; the statutory language, however, in no way requires them to do so.

■ Congress was aware that ERISA would require private pension funds to be substantially amended to conform to ERISA. Had it intended the normal retirement age to be the same age as that under the prior Plan it undoubtedly would have so provided. Obviously, the required amendments were costly and Congress wisely committed the task of balancing eligibility standards and benefit levels against the ability of the plans to pay. We agree that age 65 was permissibly chosen as the normal retirement age under the new Plan.

Janowski makes much of the fact that the normal retirement age was not redesignated until April 21, 1976. Citing no authority in support, he argues that in order to change the normal retirement age from 57 to 65 the trustees would have had to make the change before February 1, 1976, the date on which the ERISA reforms were incorporated into the prior Plan. Plaintiffs-Appellees, Cross-Appellants' reply br. at 2. In rebuttal the trustees contend that Janowski's timeliness argument may not be considered because it was raised for the first time on appeal and, alternatively, argue that the date on which the normal retirement age was redesignated is of no significance.

It is axiomatic that generally we may not review issues raised for the first time on appeal. *Houser v. General Motors Corp.*, 595 F.2d 366, 371 (7th Cir. 1979). We need not decide the timeliness issue, however, for assuming *arguendo* that the issue was preserved, it fails. In oral argument Janowski conceded that under ERISA the trustees could have changed the retirement age to 65 had they done so before February 1, 1976. Janowski interprets the word "plan" in the phrase "normal retirement age under the plan," 29 U.S.C. § 1002(24), 26 U.S.C. § 411(a)(8), to refer to the pre-ERISA Plan. He strenuously argues that, since 65 was not the normal retirement age under the pre-ERISA Plan or on the day the ERISA reforms became effective, the trustees had no authority to alter this age.

We do not read the word "plan" to have the restrictive definition Janowski urges. Nothing in the statutory language implies that the normal retirement age must be the age designated under the earlier Plan. In fact, § 411 makes no reference to any pre-ERISA provision. It merely states that a normal retirement age be specified and provides that this age may be lower than 65 but not greater than 65, provided that at 65 the participant has accumulated 10 years of credited service. The trustees did all that the statute required by specifying an age not greater than 65. We do not agree with Janowski that the date on which the pre-ERISA Plan was revised to comply with the statute is significant. The statute did not require pre-ERISA plans to be amended on the date it became effective. Thus, pre-ERISA benefits accrued under the prior Plan until February 1, 1976; pre-ERISA benefits could not accrue after ERISA became effective. Since the trustees concededly had the right to change the retirement age to 65 on February 1, 1976, they also had the right to make this change on April 21, making it retroactively effective as of February 1, 1976.

### III

The next consideration is whether the amended Plan incorporated a proper method for computing accrued benefits during pre-ERISA years. The statute [2] sets forth two formulas to be applied to pre-ERISA years. Subsection (i) provides that accrued benefits shall be determined "under the plan, as in effect from time to time prior to September 2, 1974." This subsection is triggered whenever a prior plan contained an accrued benefit formula. Subsection (ii) provides the formula to be applied if the old plan had no accrued benefit formula.

■ It is undisputed that the prior Plan did not specify a formula. However, relying on the fact that the prior Plan provided for a full benefit of $450 per month for persons retiring at age 57 after 20 years of qualified service, the district court reasoned that ¹⁄₂₀th of the benefits implicitly accrued in each of the 20 years of qualified service. We reject the concept of implied accrual of benefits, for had Congress intended that a formula based on required years of service be implied whenever a plan did not specify one, subsection (ii) would be superfluous.

2. 29 U.S.C. § 1054(b)(1)(D) in part provides: [A] defined benefit plan satisfies the requirements of this subparagraph with respect to such years of participation only if the accrued benefit of any participant with respect to such years of participation is not less than the greater of—
(i) his accrued benefit determined under the plan, as in effect from time to time prior to September 2, 1974, or
(ii) an accrued benefit which is not less than one-half of the accrued benefit to which such participant would have been entitled if subparagraph (A), (B), or (C) applied with respect to such years of participation.

3. 26 U.S.C. § 411(b)(3)(B) provides:
Less than full time service.—For purposes of this paragraph, except as provided in subparagraph (C), in the case of any employee whose customary employment is less than full time, the calculation of such employee's service on any basis which provides less than a ratable portion of the accrued benefit to which he would be entitled under the plan if his customary employment were full time shall not be treated as made on any reasonable and consistent basis.

4. 29 C.F.R. § 2530.204–2(c)(4) sets forth examples of acceptable credit allocations:

Since statutes should be construed so as to give effect to all their parts, *People v. Consolidated Rail Corp.*, 589 F.2d 1327 (1978), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2884, 61 L.Ed.2d 312 (1979), and since there was no accrued benefit formula in the prior Plan, subsection (ii) should have been applied.

### IV

■ We next consider whether the amended Plan provides appropriate accrual for part-time service. Under § 4.04 of the amended Plan, employees who work less than 20 weeks receive no accrued credit, employees who work between 20 and 35 weeks receive one-half year credit, and employees who work more than 35 weeks receive a full year's credit. The district court concluded that this "rough allocation" of credit was contrary to 26 U.S.C. § 411(b)(3)(B) [3] because it was too imprecise. In reaching its decision that the allocation was not sufficiently ratable, the district court relied on two of the examples set forth in the regulation implementing § 411(b)(3)(B), 29 C.F.R. § 2530.2042(c)(4). [4]

*Examples.* The following are examples of reasonable and consistent methods for crediting partial years of participation:
(i) A plan requires 2,000 hours of service for a full year of participation. An employee who is credited during a computation period with no less than 1,000 hours of service but less than 2,000 hours of service is credited with a partial year of participation equal to a portion of a full year of participation determined by dividing the number of hours of service credited to the employee by 2,000.
(ii) A plan requires 2,000 hours of service for a full year of participation. The plan credits service in an accrual computation period in accordance with the following table:

| Hours of service credited | Percentage of full year of participation credited |
|---|---|
| 1000 | 50 |
| 1001 to 1200 | 60 |
| 1201 to 1400 | 70 |
| 1401 to 1600 | 80 |
| 1601 to 1800 | 90 |
| 1801 and above | 100 |

These two examples contained computations which more accurately credit a part-time employee for the specific amount of time worked.

The trustees argue that the district court erred by treating these examples as regulations. They emphasize that the statute does not provide a formula for prorating credit but simply requires that the partial year crediting be reasonable and ratable. The trustees contend that the amended Plan fulfills these limitations. Hence, they insist that the district court had no authority to interfere with their discretion by imposing its own notion of reasonableness to require a more precise allocation than contemplated by the statute or the regulations.

Trustees' position fails. Under the formula adopted by the trustees, employees who have worked 21 weeks receive the same credit as those who have worked 34 weeks. For employees who work more than 21 weeks, the allocation is neither reasonable nor ratable. Janowski has propounded a method of computation whereby employees who work between 21 and 34 weeks would fall within one of the six groups, each group receiving increased credit for time worked on a percentage basis up to 35 weeks, at which point credit for the entire year would be given. Under his proposed amendment, an employee who works 20 but less than 21 weeks would receive .5 year credit, an employee who works 21 but less than 24 weeks would receive .6 year credit, an employee who works 24 but less than 28 weeks would receive .7 year credit, an employee who works 28 but less than 31 weeks would receive .8 year credit, an employee who works 31 weeks but less than 35 weeks would receive .9 year credit, and an employee who works 35 weeks or more would receive a full year's credit. This proposed Plan amendment satisfies the statute and should be incorporated into the amended Plan.

V

With respect to early retirement benefits or deferred benefits, it is undisputed that any participant enrolled in the original Plan retains the choice to receive either the new Plan's "formula" benefit or the prior Plan's "scheduled" benefit, whichever is greater. The trustees maintain that because this fact is undisputed and clearly set forth in the July 1979 Summary Plan Description Booklet, the entry of an injunction preserving this option is unnecessary and inappropriate.

As required by Fed.R.Civ.P. 65(d), the district court set forth its reasons for issuing the permanent injunction. It found that injunctive relief was appropriate for two reasons: (1) the improper schedule set forth in the 1978 Summary Plan Descrip-

Under this method of crediting partial years of participation, each employee who is credited with not less than 1,000 hours of service is credited with at least a ratable portion of a full year of participation.

(iii) A plan provides that each employee who is credited with at least 1,000 hours of service in an accrual computation period must receive credit for at least a partial year of participation for that computation period. For full accrual, however, the plan requires that an employee must be credited with a specific number of hours worked; employees who meet the 1,000 hours of service requirement but who are not credited with the specified number of hours worked required for a full year of participation are credited with a partial year of participation on a prorata basis. For example, if the plan requires 1,500 hours worked for full accrual, an employee with 1,500 hours worked would be credited with full accrual, but an employee with 1,000 hours worked and 500 other hours of service would be credited with ⅔ of full accrual. The plan's method of crediting service for accrual purposes is consistent with the requirements of this paragraph. It should be noted, however, that use of hours worked as a basis for prorating benefit accrual may result in discrimination prohibited under section 401(a)(4) of the Code.

(iv) Employee A is employed on June 1, 1980 in service covered by a plan with a calendar year accrual computation period, and which requires 1,800 hours of service for a full accrual. Employee A completes 500 hours from June 1, 1980 to December 31, 1980, and completes 100 hours per month in each month during 1981. A is admitted to participation on July 1, 1981. A is credited with 1,200 hours of service for the accrual computation period beginning January 1, 1981. Under the rules set forth in paragraph (c)(3) of this section, A is required to be credited with not less than one-third of a full accrual (600 hours divided by 1,800 hours).

tion Booklet could be readopted by the trustees and (2) retroactivity of the amendment in the July 1979 booklet was not clearly specified.

We cannot agree. In determining whether to issue a permanent injunction the likelihood of future violations must be viewed in light of past conduct. *SEC v. Resch-Cassin & Co., Inc.*, 362 F.Supp. 964 (S.D.N.Y.1973). We are also mindful that injunctive relief is not appropriate to prevent the possible occurrence of an event at some indefinite future time. *Interco Inc. v. FTC*, 478 F.Supp. 103 (D.D.C.1979). In this case no participant has been refused prior Plan "scheduled benefits," nor is there any evidence indicating that the trustees will revoke this option. The trustees have consistently stated that the option to receive benefits under the Plan was available to participants enrolled in the Plan before ERISA became effective. Indeed, although the trustees omitted the prior Plan's schedule of benefits in the January 1978 Summary Plan Description Booklet, this omission was corrected in the following year's booklet, which clearly states that "those Participants who enter Covered Employment prior to July 1, 1976 shall have the option of receiving the amount of the Early Retirement Pension as determined in Section 3.08[a] [of the amended Plan] or the monthly amount of Early Retirement Pension according to the following Schedule [computed according to the prior Plan]." July 1979 Pension Plan & Summary Plan Description Booklet at 72. Therefore, there is no reason to conclude that the trustees will attempt to revoke the option or deny a participant benefits rightfully due. If a participant is, in the future, improperly denied benefits, an action can be brought at that time and an award of damages can be fashioned which will adequately compensate for any loss. *Banks v. Trainor*, 525 F.2d 837 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). Accordingly, the injunction should not have been entered.

## VI

Lastly, we consider whether the award of attorneys' fees was proper. The trial court ordered the Fund to pay $142,485.00 in attorneys' fees for several reasons: (1) fees and expenses are authorized by the statute; (2) the class prevailed on all but one major issue; and (3) the litigation obtained a financial benefit for many members of the class. The trustees do not dispute that an award of attorneys' fees may be appropriate in some ERISA actions, but, relying on *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 109–11 (3d Cir. 1976), argue that an award of attorneys' fees is inappropriate where, as here, the litigation involves competing interests in a common fund. They contend that there has been no net benefit to the entire class of Fund participants as the result of the litigation. Again, relying on *Lindy Brothers*, they maintain that where there is no benefit to the Fund, fees may not be awarded. Further, they stress that Janowski did not prevail on the normal retirement age which, they contend, is the principal issue.

It is well-settled that the standard of review of trial court awards of attorneys' fees is abuse of discretion and that "[a]n abuse of discretion is found only when there is a definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors." *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980). It is equally well-settled that in determining whether an award of attorneys' fees in suits brought under ERISA is appropriate, courts have considered the following factors: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Iron Workers Local 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980); *Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978).

Unfortunately, the district court did not justify its decision to award attorneys' fees in terms of these specific guidelines, which would have been helpful in reviewing its decision for abuse of discretion. However, while a fuller explanation of its reasoning would have been helpful, there is sufficient analysis in the district court's decision to permit review. The district court primarily based its award on the fact that Janowski, although not wholly successful, generally prevailed on the merits, thereby preventing retirees under this and other employee pension funds from being underpaid. It also noted that although the trustees did not act in bad faith or with the intent to deprive, they failed to cooperate with Janowski in complying with at least one court order[5] and by their dereliction may have contributed to an additional expenditure of time by Janowski's attorneys. Further, distinguishing *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976), the district court recognized that the fees would not be paid out of a fund which could be recovered from the trustees and balanced this factor against the fact that the Plan's assets had significantly increased over paid benefits and that the fee award was a small factor of the total fees paid to the Fund's attorneys in the previous fiscal year. Only the factor of whether or not an award of attorneys' fees against the offending party would deter other persons acting under similar circumstances was not specifically addressed.

Fee provisions are designed as an enforcement incentive to insure that aggrieved parties who are unable to pay their own attorneys' fees are not denied access to the courts. In situations where aggrieved parties are suing as "private attorneys general," advancing a public interest, the award of attorneys' fees and costs generally has been automatic, unless special circumstances rendered the award unjust. Thus, the discretionary fee provisions in the civil

rights statutes are considered virtually mandatory. The award of fees as an enforcement incentive is not as great, however, in an ERISA action for two reasons. First, fiduciaries have a statutory obligation to insure that plans are properly administered. 29 U.S.C. § 1105. Second, while plan participants may be suing for the benefit of all beneficiaries of a particular fund, they may also be suing merely on their own behalf.

▮▮▮▮ Accordingly, it is clear that, in light of the policies reflected in ERISA, the need for awarding statutorily authorized attorney's fees to encourage enforcement of the Act is not so compelling that the discretionary provision should be construed as virtually mandatory. *Iron Workers Local 272 v. Bowen*, 624 F.2d 1255, 1265 (5th Cir. 1980). Nevertheless, we believe that this award is justified because the litigation benefitted a substantial group of Fund participants and that the award is necessary to enable aggrieved parties to invoke the power of the court when pre-ERISA benefits are in danger. The award of fees is not an abuse of discretion.

▮▮▮ In considering the amount of the award, the district court carefully and thoroughly analyzed the complexity and unsettled nature of the questions involved, the expertise of the attorneys, and the time expended to arrive at the hourly rate of $100 and $125 and the multiplier of two. We adopt the district court's analysis and conclusion with respect to the amount awarded and, as a consequence, need not repeat it. Because the award was based on several factors, only one of which was whether Janowski was the prevailing party, nothing in our decision requires recomputation of the amount awarded.

The district court's decision is affirmed with respect to exhaustion, ripeness, class representation, normal retirement age and credit for part-time benefits. The district court's opinion is reversed with respect to

5. On July 24, 1980, the district court ordered the trustees to cooperate with plaintiffs in reaching a declaratory judgment which had, up to that point, been agreed upon in form only and in drafting the necessary amendments to the Plan. The trustees refused to comply with this order, thereby necessitating an additional expenditure of time by plaintiffs' attorneys.

calculation of accrued benefits and the entry of a permanent injunction is vacated. Each party is to bear its own appeal costs. Accordingly, the district court's decision is

AFFIRMED IN PART and REVERSED IN PART.

FAIRCHILD, Senior Circuit Judge, dissenting in part.

I agree that the Plan formula for calculating credits for a part-time employee does not comply with Sec. 411(b)(3)(B).

A Plan need not, under subparagraph (C), provide for credit for a part-time employee with less than 1,000 hours (about 22 weeks) of service during a year.[1] For service beyond that, subparagraph (B) requires that the formula provide not less than a ratable portion of the accrued benefit for full-time employment.

This Plan does not define full-time employment. Even if it specified 52 weeks, however, its formula for part-time service would provide less than a ratable portion for persons with more than 26 weeks but less than 35 weeks of service. One with 27 to 34 weeks of service would have to receive more than the one-half year's credit allowed by the Plan in order to get a portion "not less than ratable."

In its present form, the Plan may be construed as defining full-time employment as 35 weeks, since it awards full credit at that point. If 35 weeks be deemed full-time employment, it would follow that, however detailed the steps in the formula, one with 22 weeks of service must receive at least $22/35$ths of one year's credit, one with 25 weeks must receive at least $5/7$ths, and one with 30 weeks must receive at least $6/7$ths.

It is clear that the Plan must be modified, but I do not agree that the court should specify any particular complying formula. I note, moreover, that there are instances where the formula set forth in Part IV of the majority opinion fails to provide not less than a ratable portion unless full-time employment be defined as at least 39 weeks, e.g., if 23 be divided by any number less than 39, the quotient exceeds .6.

I am also of the opinion that the allowance of attorneys' fees should be reduced. The implied accrual formula, dealt with in Part III of this court's opinion, appears to be the most significant victory of the class members before the district court, and we are reversing that part of the decision.

Except for the foregoing, I concur.

---

1.  Under 29 C.F.R. § 2530.200b–3(e)(1)(ii), each week of employment is the equivalent of 45 hours of service.